MARK FILIPPI *v.* JAMES F. SULLIVAN,
COMMISSIONER OF TRANSPOR-
TATION, ET AL.
(AC 23136)

Dranginis, Flynn and DiPentima, Js.

Argued June 9—officially released August 19, 2003

*Paul T. Nowosadko,* with whom, on the brief, was *Lorinda S. Coon,* for the appellant (named defendant).

*Michael J. Walsh,* with whom, on the brief, was *Ann Walsh Henderson,* for the appellee (plaintiff).

*Opinion*

FLYNN, J. The defendant[1] James F. Sullivan, commissioner of transportation (commissioner), appeals from the trial court's denial of his motion to dismiss the plaintiff's highway defect claim made pursuant to General Statutes § 13a-144.[2] On appeal, the commissioner claims that the written statutory notice to him was patently defective, which deprived the court of subject matter jurisdiction.[3] We reverse the trial court's denial

---

[1] Asplundh Tree Expert Company, also a defendant in this case, did not join this appeal.

[2] The denial of a motion to dismiss generally is considered to be interlocutory in nature and, therefore, not a final judgment for the purpose of an appeal. Our Supreme Court has held, however, that when the basis of the motion to dismiss is a colorable claim of sovereign immunity, a denial of that motion is a final judgment from which an appeal may lie. *Shay* v. *Rossi,* 253 Conn. 134, 164, 749 A.2d 1147 (2000) (en banc).

[3] The commissioner also argues that the court improperly found that the plaintiff's statutory notice was sufficient as a matter of law and that the determination of sufficiency was properly a jury issue. Because the commissioner's other claim is dispositive, we do not address this additional claim.

of the motion to dismiss and remand the case with direction to dismiss the action.

The following procedural history, allegations in the pleadings and uncontested factual averments in the commissioner's affidavits accompanying his motion are relevant to our review. On March 15, 2000, the plaintiff was involved in a traffic accident while driving in a northerly direction on Interstate 95 between exits seventy-two and seventy-three. Department of transportation crews were performing roadwork and had closed the right lane on the northbound side between exits seventy-three and seventy-five. Although signs indicating the lane closure had been placed between exits seventy-three and seventy-six, a resulting traffic jam extended beyond the sign pattern, and the plaintiff was injured in that unsigned area.

As the plaintiff traveled along the highway, he drove around a curve and came upon the stopped traffic. The vehicle traveling behind him was unable to stop in time and violently struck the rear end of the plaintiff's vehicle causing the plaintiff's vehicle to collide with the vehicle in front of him. As a result of that collision, the plaintiff was left comatose for several weeks and suffered several other injuries, including a ruptured aorta and multiple spinal fractures, which have left the plaintiff disabled and wheelchair bound.

On June 1, 2000, pursuant to § 13a-144, the plaintiff filed written notice with the commissioner of transportation of his intent to pursue a defective highway claim.[4]

---

[4] The plaintiff's statutory notice of highway defect claim, pursuant to § 13a-144, provided in relevant part:

"I. Date of Injury The injury occurred on March 15, 2000, at approximately 1:00 p.m.

"II. Place of Injury The injury occurred while [the plaintiff] was traveling in a vehicle in the northbound lane of I-95, between exits 72 and 73. More specifically, the injury occurred at a point in the roadway approximately 1/4 of a mile south of exit 73 exit ramp, and approximately 1/10 of a mile north of exit 72 exit ramp.

"III. General Description of Cause of Injury On the date in question,

On January 25, 2001, the plaintiff commenced an action against the commissioner. On January 29, 2002, the commissioner filed a motion to dismiss on the ground that the court lacked subject matter jurisdiction due to the plaintiff's defective notice, arguing that the notice was patently defective in that it was not sufficiently accurate because it named two locations, 1.6 miles apart, as the place of injury. The court heard oral argument and denied the motion from the bench on May 13, 2002, holding that the statutory notice was "sufficient."

The commissioner now appeals and claims that the court improperly denied the motion to dismiss. The

[department of transportation] construction crews were working on the highway north of Exit 73 extending to Exit 75. The DOT construction crews consisted of three trucks and approximately seven laborers. Eight signs indicating right lane closure were in place between Exit 73 and Exit 76.

"Backed-up traffic, however, at 13:00 hours in the afternoon in question extended far behind the sign pattern. Moreover, the area where the subject accident occurred involves a stretch of slopes, grades and curves. As indicated in the attached police reports, when the operator which struck the plaintiff's vehicle 'negotiated a graded blind curve just (prior to the accident location), he literally ran into stopped traffic at heavy legal highway speed—probably 65-79 miles per hour. There were no signs posted prior to the impact warning traffic of the construction zone—traffic had backed up and was congested almost [one-tenth] of a mile south of any visible highway construction signs.' . . . .

"Specifically, the DOT construction workers had created a defective condition on the highway, which included, but is not limited to, a condition such that vehicles traveling at the legal highway speed were forced to transverse an area of slopes, grades and curves, and then immediately come upon stopped traffic, thereby causing the severe and serious collision, which resulted in the plaintiff's injuries.

"IV. Nature of Injuries As a result of being rear ended by a vehicle being operated by Gerald C. Fragione . . . the [plaintiff] sustained serious and life threatening injuries. More specifically, among the injuries he received was a ruptured aorta as well as several serious spinal injuries, including fractured vertebrae and herniated discs. [The plaintiff] was transported by Life Star Helicopter to Hartford Hospital, and remained a patient for a period of several weeks, during which time he underwent surgery for repair of the aorta, as well as spinal surgery, involving the placement of rods and pins in his back. Additionally, [the plaintiff] sustained several other serious injuries, including contusions, lacerations, ligament sprains and related injuries as a result of the collision."

commissioner argues that the statutory notice given by the plaintiff was patently defective because the place of injury described was actually two locations, 1.6 miles apart. Since the issue on appeal is a question of law, our review is plenary. See *Oberlander* v. *Sullivan*, 70 Conn. App. 741, 746, 799 A.2d 1114, cert. denied, 261 Conn. 924, 806 A.2d 1061 (2002).

"It is well established . . . that the state is immune from suit unless it consents to be sued by . . . waiving sovereign immunity . . . ." (Internal quotation marks omitted.) *Bresnan* v. *Frankel*, 224 Conn. 23, 25–26, 615 A.2d 1040 (1992). Section 13a-144 creates such a waiver and provides in relevant part: "No . . . action shall be brought except within two years from the date of such injury, nor unless notice of such injury and a general description of the same and of the cause thereof and of the time and *place of its occurrence* has been given in writing within ninety days thereafter to the commissioner. . . ." (Emphasis added.) In our opinion, the statutory phrase, "*place of its occurrence*," refers to the prior phrase, "such injury," and therefore, it is the place of injury that must be described in the notice required by statute.

This statute provides a limited waiver of sovereign immunity and, as a break from common law, is to be strictly construed. *Lussier* v. *Dept. of Transportation*, 228 Conn. 343, 349, 636 A.2d 808 (1994). A highway defect claim varies from a common-law negligence case. The plaintiff is required by statute to give the commissioner written notice of the time, place of injury, defect and description of the injuries incurred so as to furnish the commissioner with sufficient information to permit him to make a timely investigation of the facts. Id., 357.

Our review, in this case, requires that we analyze only one element of a highway defect claim, namely,

the statutory written notice provision. "The notice requirement contained in § 13a-144 is a condition precedent which, if not met, will prevent the destruction of sovereign immunity." Id., 354. The statutory written notice must be adequately specific and accurate so as to give the commissioner "sufficient information as to the injury and the cause thereof and the time and place of its occurrence to permit the commissioner to gather information about the case intelligently." Id., 357. "The purpose of the requirement of notice is to furnish the party against whom a claim was to be made such warning as would prompt him to make such inquiries as he might deem necessary or prudent for the preservation of his interests, and such information as would furnish him a reasonable guide in the conduct of such inquiries, and in obtaining such information as he might deem helpful for his protection." (Internal quotation marks omitted.) Id., 354.

"Ordinarily, the question of the adequacy of notice is one for the jury and not for the court, and the cases make clear that this question must be determined on the basis of the facts of the particular case. . . . Before submitting the question to the jury, however, the trial court must first determine whether, as a matter of law, a purported notice patently meets or fails to meet . . . the statutory requirements." (Citations omitted; internal quotation marks omitted.) *Zotta* v. *Burns*, 8 Conn. App. 169, 173, 511 A.2d 373 (1986).

There are two categories of cases in which the written notice is patently defective because of a problem with the description of the place of injury. The first category consists of situations where a court has found that the notice stated a location different from the place of actual injury. See *Serrano* v. *Burns*, 70 Conn. App. 21, 26–27, 796 A.2d 1258, cert. denied, 261 Conn. 932, 806 A.2d 1066 (2002); see also *Ozmun* v. *Burns*, 18 Conn. App. 677, 679 n.3, 680–81, 559 A.2d 1143 (1989) (notice

describing location using "north" in place of "south" and "east" in place of "west"); *Zotta* v. *Burns*, supra, 8 Conn. App. 170 (location identified as "route 6 in Bolton" and accident occurred on "Camp Meeting Road in Bolton"). The second category consists of situations where the "description is so vague in its breadth that the defendant could not be reasonably expected to make a timely investigation based on the information provided." *Serrano* v. *Burns*, supra, 27; see also *Bresnan* v. *Frankel*, supra, 224 Conn. 25–26 (location identified as "Route 14A, Plainfield, Connecticut," without any further detail and where Route 14A was six mile stretch of road); *Schaap* v. *Meriden*, 139 Conn. 254, 256, 93 A.2d 152 (1952) (location identified as "near the edge of a manhole cover" without identifying particular one of numerous manhole covers); *Murray* v. *Commissioner of Transportation*, 31 Conn. App. 752, 753, 626 A.2d 1328 (1993) (location identified simply as "the northern curbline of Route 22," a public highway running through North Haven).

In this case, the plaintiff's notice described the place of injury as "in the northbound lane of I-95, between Exits 72 and 73. More specifically, the injury occurred at a point in the roadway approximately 1/4 of a mile south of Exit 73 exit ramp, and approximately one tenth of a mile north of Exit 72 exit ramp." Frederick Atwell, a planner for the department of transportation, supplied an affidavit that was attached to the commissioner's motion to dismiss. This uncontradicted affidavit brought to the court's attention the fact that the place of injury described in the notice was not one place but actually two, and those locations were 1.6 miles apart.

We conclude that the description of the plaintiff's place of injury in his written statutory notice does not describe the wrong place of injury because it is undisputed that the collision that caused it did occur somewhere within the 1.6 miles of highway. However, the

location of the place of injury as described is too vague because its 1.6 mile length does not allow the commissioner any reasonable opportunity to investigate. It falls into the second category of patently defective descriptions of places of injury of which we spoke in *Serrano* v. *Burns*, supra, 70 Conn. App. 21, in that it is so vague in its breadth that the commissioner could not be expected reasonably to make a timely investigation based on the information provided.

The plaintiff does not make any further statements regarding the place of injury, and there was only a slight clarification of the location when the notice mentioned that the accident occurred after a blind curve somewhere within the 1.6 miles. This additional information did not clarify the geographic location of the place of injury. According to the Atwell affidavit, there is more than one curve in the 1.6 mile distance. He averred in his affidavit that the area between the two points consists of "various terrains including grades, *curves*, slopes and straight roadway." (Emphasis added.) There is no further description of which of these curves was involved. This defective notice cannot be saved from its patent infirmity as was the notice in *Lussier* v. *Dept. of Transportation*, supra, 228 Conn. 357, because there was only one place where the Shunock River crossed the highway, and thus the place of injury was deemed to be described adequately.

We conclude that nothing in the statutory written notice or the attached police report would allow the commissioner to locate the accident geographically. There was no mention in the written statutory notice of the direction in which the road curved or which exit was nearer to the accident. The plaintiff's notice failed to provide the location of the injury with reasonable definiteness and lacked the specificity necessary to permit the commissioner to gather information to protect

the state's interests. Therefore, we conclude that the statutory notice was patently defective.

The commissioner argues that because the written notice was patently defective, the court improperly denied the motion to dismiss. In ruling on whether a complaint survives a motion to dismiss, we must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the plaintiff. *Oberlander* v. *Sullivan*, supra, 70 Conn. App. 746. Also, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be made. *Olympia Mortgage Corp.* v. *Klein*, 61 Conn. App. 305, 307, 763 A.2d 1055 (2001). As previously explained, our review of this issue is plenary. *Oberlander* v. *Sullivan*, supra, 746.

When the conditions of the notice required by statute are not met, no cause of action exists. *Bresnan* v. *Frankel*, supra, 224 Conn. 26. "[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." (Internal quotation marks omitted.) *Oberlander* v. *Sullivan*, supra, 70 Conn. App. 746. Because we have determined that the plaintiff's notice was patently defective, we also conclude that the court had no subject matter jurisdiction and improperly denied the motion to dismiss.

The commissioner disputes some of the court's stated reasons for finding that the plaintiff's statutory notice was adequate. He calls our attention first to the court's consideration of the plaintiff's comatose condition for several weeks after the collision. We agree with the commissioner that, although motivated by humane concern, the court improperly took into account the plaintiff's medical condition when determining the adequacy of the statutory notice. The court stated that it "should

take into consideration the condition of the plaintiff as far as being able to assist in giving notice in this case." We understand that death or injury may make precision in the statutory notice difficult, and the court acted out of humane considerations. The potential difficulty of obtaining information regarding the place of injury is the reason the legal standard is not the exact geodetic place of injury, but the description simply must "provide sufficient information . . . to permit the commissioner to gather information about the case intelligently." *Lussier* v. *Dept. of Transportation*, supra, 228 Conn. 357. However, that standard is not satisfied when the one place of injury is described as two distinct places. Despite the plaintiff's serious injuries, we are constrained by our Supreme Court's decision in *Lussier*, which held that "[n]otices of claim should not be judged by different standards depending upon the extent of the injury." Id., 355–56.

As an additional argument, the plaintiff points out that the state police report on which he relied was mistaken in setting the points describing the place of injury, and the court stated that the plaintiff should be allowed to rely on information recorded by the state police, another state agency. The court explained that "[i]t's clear the police did an investigation, that counsel relied on the statement of the police, the department of transportation is a state agency, so I don't see why the plaintiff could not rely on that report." We do not agree that the plaintiff can rely on a state agency's incorrect information in a highway defect claim when the accuracy of the information can be verified simply by driving between exits seventy-two and seventy-three and checking an odometer.

This theory effectively would apply equitable estoppel and bar the state from claiming that the statutory notice was defective because another state agency supplied the inaccurate information. In this case, the police

report stated that the collision occurred at one purported specific area of the highway, and it was later discovered that the police report measurements actually described two distinct points, 1.6 miles apart.

It is the plaintiff's responsibility to provide sufficient written notice under § 13a-144. See *Bresnan* v. *Frankel*, supra, 224 Conn. 27. In a situation such as this one, estoppel can be applied only when (1) the state did or said something calculated or intended to induce the other party to believe certain facts exist and to act on those facts, (2) the other party justifiably acts in reliance on those facts to its detriment, (3) the state acted through an authorized agent and special circumstances exist which make it highly inequitable or oppressive to enforce the applicable law and (4) the party claiming estoppel established that it exercised due diligence and that it not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge. See *Zotta* v. *Burns*, supra, 8 Conn. App. 175. No evidence was presented on this fourth issue. There is nothing in the record before us, therefore, from which it might be inferred that the plaintiff or his agents who gave the notice had no convenient means of acquiring the correct knowledge, and, therefore, the fourth element could not be satisfied.

The commissioner also contends that the court relaxed the legal standard for such written notices. The plaintiff did not urge that there should be a relaxed standard employed on the basis of the nature of the claimed defect, but instead maintained that the written notice given was sufficient to give the commissioner a reasonable guide. The court stated that "[t]his isn't a situation where there's a pothole at a specific spot on the road. This is a case where there were signs and traffic was backed up, and I don't think the exact location of the injury is that necessary to determine what happened in this case . . . ."

Although the cause of the injury is important, § 13a-144 requires that the place of injury be described in the written notice. Section 13a-144 is to be strictly construed. *Lussier* v. *Dept. of Transportation*, supra, 228 Conn. 349. The statute expressly states that the place of injury must be included in the written notice. The plaintiff never alleged that he was dragged or pushed for over a mile and a half causing injury. The severe injuries he described in his complaint occurred in one place on the highway where he was struck from behind by another vehicle and he, in turn, struck the vehicle in front of him. The erroneous description of the two points did not sufficiently describe that one place of injury.

As interpreted in our case law, § 13a-144 requires that a plaintiff must prove that the defect in the highway of which he complains was the sole proximate cause of his injury. See *Ormsby* v. *Frankel*, 255 Conn. 670, 676, 768 A.2d 441 (2001). A more definite location of the place of injury was important to the commissioner's case if he were to act in his own interest to disprove that his negligence was the sole proximate cause of the accident. The plaintiff was struck from behind by another vehicle causing his vehicle to strike another proceeding in front of him. We, therefore, do not agree that the nature of the defect, lack of signage warning of the impending lane closure, permitted a relaxed standard. To safeguard his interest, the commissioner was entitled to investigate the location of the injury. We conclude that the plaintiff's written statutory notice was patently defective, and the court improperly denied the commissioner's motion to dismiss.

The denial of the defendant's motion to dismiss is reversed and the case is remanded with direction to render judgment dismissing the complaint against the commissioner.

In this opinion the other judges concurred.