# MARK FILIPPI *v.* JAMES F. SULLIVAN, COMMISSIONER OF TRANS-PORTATION, ET AL.
## (SC 17068)

Sullivan, C. J., and Borden, Katz, Palmer and Vertefeuille, Js.

Argued September 7, 2004—officially released February 22, 2005

*Michael J. Walsh,* with whom, on the brief, was *Ann Walsh Henderson,* for the appellant (plaintiff).

*Paul Nowosadko,* with whom, on the brief, was *Lorinda S. Coon,* for the appellee (named defendant).

*Opinion*

PALMER, J. The plaintiff, Mark Filippi, brought this defective highway action under General Statutes § 13a-

144[1] against the named defendant, James F. Sullivan, the commissioner of transportation (commissioner),[2] seeking damages for injuries that the plaintiff had sustained in an automobile accident allegedly caused by the commissioner's negligent failure to post lane closure signs on a portion of Interstate 95 in East Lyme. The commissioner filed a motion to dismiss the action on the ground that the notice submitted by the plaintiff to the commissioner as required by § 13a-144 was patently defective and, therefore, insufficient as a matter of law. The trial court denied the motion to dismiss, and the commissioner appealed to the Appellate Court. On appeal, the Appellate Court concluded that the trial court improperly had determined that the notice was not insufficient as a matter of law and, therefore, reversed the trial court's denial of the commissioner's motion to dismiss. *Filippi* v. *Sullivan*, 78 Conn. App. 796, 807, 829 A.2d 77 (2003). We granted the plaintiff's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly conclude that the plaintiff's written notice under . . . § 13a-144 was patently defective?" *Filippi* v. *Sullivan*, 266 Conn. 916, 833 A.2d 467 (2003). We answer that question in the negative and, accordingly, reverse the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following relevant facts. "On March 15, 2000, the plain-

---

[1] General Statutes § 13a-144, which serves as a waiver of the state's sovereign immunity for claims arising out of certain highway defects, provides in relevant part: "Any person injured in person or property through the neglect or default of the state . . . by means of any defective highway, bridge or sidewalk which it is the duty of the Commissioner of Transportation to keep in repair . . . may bring a civil action to recover damages sustained thereby against the commissioner in the Superior Court. No such action shall be brought except within two years from the date of such injury, nor unless notice of such injury and a general description of the same and of the cause thereof and of the time and place of its occurrence has been given in writing within ninety days thereafter to the commissioner. . . ."

[2] The plaintiff also named Asplundh Tree Expert Company (Asplundh) as a defendant. Asplundh is not a party to this appeal, however.

tiff was involved in a traffic accident while driving in a northerly direction on Interstate 95 between exits seventy-two and seventy-three. Department of transportation crews were performing roadwork and had closed the right lane on the northbound side [of Interstate 95] between exits seventy-three and seventy-five. Although signs indicating the lane closure had been placed between exits seventy-three and seventy-six, a resulting traffic jam extended beyond the sign pattern, and the plaintiff was injured in that unsigned area.

"As the plaintiff traveled along the highway, he drove around a [graded blind] curve and came upon the stopped traffic. The vehicle traveling behind him was unable to stop in time and violently struck the rear end of the plaintiff's vehicle causing the plaintiff's vehicle to collide with the vehicle in front of him. As a result of that collision, the plaintiff was left comatose for several weeks and suffered several other injuries, including a ruptured aorta and multiple spinal fractures, which have left the plaintiff disabled and wheelchair bound." *Filippi* v. *Sullivan*, supra, 78 Conn. App. 798.

Thereafter, pursuant to § 13a-144, the plaintiff filed timely written notice with the commissioner of his intent to assert a defective highway claim.[3] The plaintiff

---

[3] The notice that the plaintiff filed with the commissioner pursuant to § 13a-144 provides in relevant part:

"I. Date of Injury

"The injury occurred on March 15, 2000 at approximately 1:00 p.m.

"II. Place of Injury

"The injury occurred while [the plaintiff] was traveling in a vehicle in the northbound lane of I-95, between Exits 72 and 73. More specifically, the injury occurred at a point in the roadway approximately 1/4 of a mile south of [the] Exit 73 exit ramp, and approximately 1/10 of a mile north of [the] Exit 72 exit ramp.

"III. General Description of Cause of Injury

"On the date in question, [department of transportation (department)] construction crews were working on the highway north of Exit 73 extending to Exit 75. The [department] construction crews consisted of three trucks and approximately seven laborers. Eight signs indicating right lane closure . . . were in place between Exit 73 and Exit 76.

subsequently commenced this action, alleging that the commissioner had breached his duty to maintain the highway in a reasonably safe condition in failing to post sufficient warning signs of the lane closure. The commissioner filed a motion to dismiss the action on the ground that the notice's description of the place where the injury had occurred, namely, "at a point in the roadway [located immediately after a graded blind curve that was] approximately 1/4 of a mile south of [the] Exit 73 exit ramp, and approximately 1/10 of a mile north of [the] Exit 72 exit ramp," was inadequate as a matter of law. In support of his motion to dismiss, the commissioner submitted an affidavit provided by

"Backed-up traffic, however, at 13:00 hours in the afternoon in question extended far behind the sign pattern. Moreover, the area where the subject accident occurred involves a stretch of slopes, grades and curves. As indicated in the attached police report, when the operator which struck the plaintiff's vehicle 'negotiated a graded blind curve just (prior to the accident location), he literally ran into stopped traffic at heavy legal highway speed— probably 65-70 miles per hour. There were no signs posted prior to the impact warning traffic of the construction zone—traffic had backed up and was congested almost 1/10 of a mile south of any visible highway construction signs.' (See attached police report).

"Specifically, the [department] construction workers had created a defective condition on the highway which included, but [was] not limited to, a condition such that vehicles traveling at the legal highway speed were forced to transverse an area of slopes, grades, and curves, and then immediately come upon stopped traffic, thereby causing the severe and serious collision, which resulted in the plaintiff's injuries.

"IV. Nature of Injuries

"As a result of being rearended by a vehicle being operated by Gerald C. Fragione (see attached police report), the [plaintiff] . . . sustained serious and life threatening injuries. More specifically, among the injuries he received was a ruptured aorta as well as several serious spinal injuries including fractured vertebrae and herniated discs. [The plaintiff] was transported by . . . [h]elicopter to Hartford Hospital, [where he] remained a patient for a period of several weeks, during which time he underwent surgery for repair of the aorta, as well as spinal surgery, involving the placement of rods and pins in his back. Additionally, [the plaintiff] sustained several other serious injuries, including contusions, lacerations, ligament sprains and related injuries as a result of the collision.

"A copy of the police report, as forwarded to [the plaintiff's] counsel by the Department of Public Safety, is attached hereto as [an exhibit]."

Frederick Atwell, a planner for the department of transportation, who stated therein that "[t]he location of injury described in the plaintiff's notice of claim . . . describes two different and distinct locations . . . . The two distinct locations described are . . . more than 1.6 miles apart." Atwell also stated that, "[t]hroughout the [1.6 mile] stretch of roadway between the locations identified by the plaintiff, there are various terrains including grades, curves, slopes and straight roadway." The commissioner maintained that, in light of these uncontested assertions, the plaintiff's notice was patently defective insofar as its description of the place of injury was concerned.[4]

After a hearing, the trial court issued a ruling from the bench denying the commissioner's motion to dismiss. The commissioner appealed from the denial of the motion to the Appellate Court,[5] claiming that the plaintiff's notice was patently defective because it identified the place of injury as two different locations that are 1.6 miles apart. The commissioner also claimed that the statement in the notice indicating that the accident had occurred immediately after a "graded blind curve" was insufficient to save the notice from infirmity in light of Atwell's uncontroverted assertion that the 1.6 mile stretch of highway identified in the notice contained more than one curve.

---

[4] The description of the place of injury contained in the plaintiff's notice was taken directly from the state police report of the accident. In light of Atwell's uncontradicted assertion that the point one quarter of one mile south of the exit ramp for exit seventy-three and the point one tenth of one mile north of the exit ramp for exit seventy-two are not the same point but, rather, two points that are approximately 1.6 miles apart, it is apparent that the police report is erroneous insofar as it identifies two different points where the accident occurred instead of one.

[5] Although the denial of a motion to dismiss generally is an interlocutory ruling that does not constitute an appealable final judgment, the denial of a motion to dismiss filed on the basis of a colorable claim of sovereign immunity is an immediately appealable final judgment. E.g., *Miller* v. *Egan*, 265 Conn. 301, 303 n.2, 828 A.2d 549 (2003).

The Appellate Court agreed with the commissioner that "the location of the place of injury as described [in the notice was] too vague because its 1.6 mile length [did] not allow the commissioner any reasonable opportunity to investigate. . . . [With respect to the place of injury, the notice] is so vague in its breadth that the commissioner could not be expected reasonably to make a timely investigation based on the information provided." *Filippi* v. *Sullivan,* supra, 78 Conn. App. 802–803. With regard to that part of the notice indicating that the accident had occurred immediately after the plaintiff had negotiated a graded blind curve, the Appellate Court stated that "[t]his additional information did not clarify the geographic location of the place of injury. According to [Atwell's] affidavit, there is more than one curve in the 1.6 mile distance. [Atwell] averred in his affidavit that the area between the two points consists of 'various terrains including grades, curves, slopes and straight roadway.' . . . There is no further description of which of these curves was involved." Id., 803. Thus, the Appellate Court concluded that "nothing in the statutory written notice or the attached police report would allow the commissioner to locate the accident geographically. There was no mention in the [plaintiff's] notice of the direction in which the road curved or which exit was nearer to the accident. The plaintiff's notice failed to provide the location of the injury with reasonable definiteness and lacked the specificity necessary to permit the commissioner to gather information to protect the state's interests. Therefore . . . the [plaintiff's] notice was patently defective." Id., 803–804.

On the granting of certification, the plaintiff appealed to this court, contending that the Appellate Court improperly had concluded that the plaintiff's notice was inadequate as a matter of law because it did not contain a reasonably definite and specific description of the place of injury. In particular, the plaintiff maintains,

inter alia, that the facts set forth in the notice pertaining to the place of injury were sufficient to permit a determination that the notice was not patently defective. We agree with the plaintiff.

Before addressing the merits of the plaintiff's claim, we set forth the applicable standard of review. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo." (Internal quotation marks omitted.) *State* v. *Welwood*, 258 Conn. 425, 433, 780 A.2d 924 (2001). Moreover, "[t]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. . . . When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Citation omitted; internal quotation marks omitted.) *Lagassey* v. *State*, 268 Conn. 723, 736, 846 A.2d 831 (2004).

We now turn to the plaintiff's contention that, contrary to the conclusion of the Appellate Court, the notice that he provided to the commissioner pursuant to § 13a-144 was not patently defective. The principles that govern our resolution of the plaintiff's claim are well established. "[Section] 13a-144 created a new cause of action not authorized at common law, in derogation of sovereign immunity. The notice requirement contained in § 13a-144 is a condition precedent which, if not met,

will prevent the destruction of sovereign immunity." *Lussier* v. *Dept. of Transportation*, 228 Conn. 343, 354, 636 A.2d 808 (1994).

"The notice [mandated under § 13a-144] is to be tested with reference to the purpose for which it is required." *Morico* v. *Cox*, 134 Conn. 218, 223, 56 A.2d 522 (1947). "The [notice] requirement . . . was not devised as a means of placing difficulties in the path of an injured person. The purpose [of notice is] . . . to furnish the commissioner with such information as [will] enable him to make a timely investigation of the facts upon which a claim for damages [is] being made. . . . The notice requirement is not intended merely to alert the commissioner to the occurrence of an accident and resulting injury, but rather to permit the commissioner to gather information to protect himself in the event of a lawsuit. . . . [In other words] [t]he purpose of the requirement of notice is to furnish the [commissioner] such warning as would prompt him to make such inquiries as he might deem necessary or prudent for the preservation of his interests, and such information as would furnish him a reasonable guide in the conduct of such inquiries, and in obtaining such information as he might deem helpful for his protection. . . . Unless a notice, in describing the place or cause of an injury, patently meets or fails to meet this test, the question of its adequacy is one for the jury and not for the court, and the cases make clear that this question must be determined on the basis of the facts of the particular case." (Citations omitted; internal quotation marks omitted.) *Lussier* v. *Dept. of Transportation*, supra, 228 Conn. 354.

With respect to the degree of precision required of a claimant in describing the place of injury, "in many cases exactness of statement as to place cannot be expected, for the excitement and disturbance caused by the accident . . . make it impossible to observe

with any carefulness the place where the accident occur[red] . . . . In such cases reasonable definiteness is all that can be expected or should be required. . . .

"Such precision is, therefore, not essential in order to comply with § 13a-144. . . . [Rather] [u]nder § 13a-144, the notice must provide sufficient information as to the injury and the cause thereof and the time and place of its occurrence to permit the commissioner to gather information about the case intelligently." (Citations omitted; internal quotation marks omitted.) Id., 356–57.[6]

Applying the foregoing principles, we conclude that the plaintiff's notice was not patently defective. It is true, as the Appellate Court explained, that Atwell's "uncontradicted affidavit brought to the [trial] court's attention the fact that the place of injury described in

---

[6] Thus, as the Appellate Court noted, "[t]here are two categories of cases in which the written notice is patently defective because of a problem with the description of the place of injury. The first category consists of situations [in which] a court has found that the notice stated a location different from the [actual] place of . . . injury. See *Serrano* v. *Burns*, 70 Conn. App. 21, 26–27, 796 A.2d 1258, cert. denied, 261 Conn. 932, 806 A.2d 1066 (2002); see also *Ozmun* v. *Burns*, 18 Conn. App. 677, 679 n.3, 680–81, 559 A.2d 1143 (1989) (notice describing location using 'north' in place of 'south' and 'east' in place of 'west'); *Zotta* v. *Burns*, [8 Conn. App. 169, 170, 511 A.2d 373 (1986)] (location identified as 'route 6 in Bolton' [when] accident [actually] occurred on 'Camp Meeting Road in Bolton'). The second category consists of situations [in which] the 'description is so vague in its breadth that the [commissioner] could not be reasonably expected to make a timely investigation based on the information provided.' *Serrano* v. *Burns*, supra, 27; see also *Bresnan* v. *Frankel*, [224 Conn. 23, 25–26, 615 A.2d 1040 (1992)] (location identified as 'Route 14A, Plainfield, Connecticut,' without any further detail [even though] Route 14A was six mile stretch of road); *Schaap* v. *Meriden*, 139 Conn. 254, 256, 93 A.2d 152 (1952) (location identified as 'near the edge of a manhole cover' without [identification of] particular one of numerous manhole covers); *Murray* v. *Commissioner of Transportation*, 31 Conn. App. 752, 753, 626 A.2d 1328 (1993) (location identified simply as 'the northern curbline of Route 22,' a public highway running through North Haven)." *Filippi* v. *Sullivan*, supra, 78 Conn. App. 801–802.

the notice [is] not one place but actually two, and [that] those locations [are] 1.6 miles apart." *Filippi* v. *Sullivan*, supra, 78 Conn. App. 802. It also is true that the accident could have occurred at only one such point. The notice provides that the accident occurred at a point in the road immediately after a "graded blind curve . . . ." (Internal quotation marks omitted.) Although Atwell stated in his affidavit that there is more than one curve in the road between the two points identified in the notice, he did not indicate that there is more than one *graded blind* curve *immediately prior* to either of those two points. In the absence of anything in the record to establish the existence of more than one such graded blind curve, we cannot say that the notice necessarily was too vague to permit the commissioner to identify the location of the accident and injury with reasonable certainty. In other words, if there is only one graded blind curve immediately prior to one of the two points identified in the notice, the notice was sufficient to allow the commissioner to determine, with reasonable certainty, the place of injury. In such circumstances, the notice reasonably cannot be characterized as patently defective. The sufficiency of the notice with respect to the place of injury, therefore, is a matter to be determined by the jury.[7]

---

[7] We note that the plaintiff also claims that any deficiency in the notice may be excused because he was severely injured and unable to ascertain the location of the accident with reasonable certainty during the required ninety day notice period. The plaintiff further contends that he should be permitted to rely on the accuracy of the state police report. We are not persuaded by these arguments. As we previously have stated, the adequacy of the notice required by § 13a-144 "should not be judged by different standards depending upon the extent of the injury." *Lussier* v. *Dept. of Transportation*, supra, 228 Conn. 355–56. Similarly, the adequacy of the notice required by § 13a-144 does not depend on the accuracy of the accident report prepared by the police. For purposes of § 13a-144, the party bringing the defective highway claim, and not the official who prepared the accident report, is responsible for undertaking whatever investigation may be necessary to ensure that the notice filed with the commissioner meets the statutory requirements.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand the case to the trial court for further proceedings according to law.

In this opinion the other justices concurred.