ALTER AND ASSOCIATES, LLC *v.* THERESA C. LANTZ, COMMISSIONER OF CORRECTION, ET AL.
(AC 25385)

Lavery, C. J., and Schaller and Peters, Js.

16

Argued March 31—officially released July 5, 2005

*E. Stephen Briggs*, for the appellant (plaintiff).

*Terrence M. O'Neill*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Henri Alexandre*, assistant attorney general, for the appellees (defendants).

*Opinion*

PETERS, J. In the absence of statutory authority to the contrary, the doctrine of sovereign immunity protects the state from civil liability for monetary damages unless a claimant has obtained permission to sue from the claims commissioner. In this case, a disappointed government contractor seeks to compel the state commissioner to perform contractual obligations arising out of a bid award that, according to the contractor, was wrongfully terminated. To sidestep the defense of sovereign immunity, the contractor's remedial claims seek equitable rather than monetary relief. The trial court nonetheless concluded that it lacked subject matter jurisdiction and dismissed the contractor's complaint. We agree with the court and affirm the judgment of dismissal.

The plaintiff, Alter and Associates, LLC, filed a complaint seeking an injunction or a writ of mandamus to compel the defendants, commissioner of correction Theresa C. Lantz and the department of correction, to go forward with the plaintiff's proposal to provide staff training on sexual harassment issues. It alleged that the parties had entered into a binding contract when the defendants notified the plaintiff that it had been chosen to provide such services. It further alleged that, having

entered into this contract, the defendants wrongfully rescinded it in reliance on information that another state agency had found the plaintiff's performance of a similar services contract to have been unsatisfactory. Because the plaintiff was not afforded the opportunity to challenge the accuracy of this information, the plaintiff claimed that the defendants' disavowal of the bid award violated the state bidding and purchasing statutes, General Statutes § 4a-50 et seq.[1] The plaintiff further claimed that monetary damages would not provide an adequate remedy for these statutory violations and that equitable relief was warranted.

The defendants filed a motion to dismiss the plaintiff's complaint. They argued that the allegations contained therein did not support a claim for equitable relief and that the doctrine of sovereign immunity precluded the plaintiff from receiving a damages award.[2]

The trial court granted the motion to dismiss. Although it recognized that some attacks on a governmental bidding process might warrant relief other than damages, it held that such attacks required allegations of fraud, corruption or similar taints on the bidding process. Because the plaintiff's complaint contained no such allegations but relied instead on allegations of

---

[1] Although the plaintiff's complaint also charged the defendants with having violated the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq., that claim has not been pursued in the plaintiff's appellate brief.

[2] Interstitially, relying on specifications contained in the request for bids, the defendants also maintained that, in the absence of a formal written contract, the plaintiff had no contractual rights whatsoever. This argument is premature. "When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *Filippi* v. *Sullivan*, 273 Conn. 1, 8, 866 A.2d 599 (2005). The trial court properly did not resolve the parties' disagreement about the nature of their contractual relationship.

improper reliance on mistaken information, the court held that the plaintiff's complaint did not differ, in principle, from other controversies about the validity and the enforceability of a contract. Accordingly, the court held that the only remedy to which the plaintiff might be entitled was an award of monetary damages, which had to be presented to the claims commissioner.

In its appeal to this court, the plaintiff argues that the judgment of dismissal should be set aside. In its view, the trial court improperly denied the plaintiff the equitable relief that it sought because the court (1) should have undertaken an equitable inquiry broader than a consideration of fraud or corruption of the bidding process and (2) should have enforced the defendants' ministerial duty to comply with state competitive bidding statutes. We are not persuaded.

"The standard of review of a motion to dismiss is . . . well established. In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *First Union National Bank* v. *Hi Ho Mall Shopping Ventures, Inc.*, 273 Conn. 287, 291, 869 A.2d 1193 (2005).

I

PLAINTIFF'S ALLEGATIONS

The plaintiff's complaint seeking a writ of mandamus and injunctive relief alleged that the plaintiff had submitted a bid to the defendants in response to the depart-

ment's search for a personal services contractor to perform sexual harassment training for departmental employees. In correspondence dated October 22, 2003, the defendants allegedly awarded the contract to the plaintiff.[3] The plaintiff incurred expenses in preparation for performance of the contract.

On November 13, 2003, however, the defendants informed the plaintiff, again by letter, of the rescission of the contract. The letter of rescission faulted the plaintiff for having failed to disclose that similar services that the plaintiff had performed for the commission on human rights and opportunities (CHRO) had been found to have been incomplete and unprofessional.[4] In a subsequent public monthly meeting of the CHRO, the defendant commissioner thanked the members of that commission for providing "extremely valuable information" that led to rescission of the defendants' contract with the plaintiff.

The plaintiff immediately challenged the accuracy of this derogatory information. Despite its repeated requests for a hearing, it was not afforded an opportunity to provide evidence to the contrary or to obtain more specific information about the basis for the position taken by the CHRO.

After the rescission of the contract with the plaintiff, the defendants canceled the initial request for proposal

---

[3] The letter informed the plaintiff that it had "been chosen by the Department of Correction as our sexual harassment training consultant. We will be in contact with you as soon as possible to prepare a contract."

[4] The letter stated: "It has been brought to my attention that a material fact was omitted from your presentation . . . . The issue concerns unsatisfactory service provided to a previous client. My understanding is that work your firm performed for the Commission on Human Rights and Opportunities (CHRO) was, according to that agency, incomplete and not of a professional standard. . . . The facts, as I currently understand them, would certainly have been considered before the committee's decision in the award of the Sexual Harassment training project. Due to the non-disclosure on your part of very significant factors, I have no choice but to notify your agency that your services will not be needed for this project."

to which the plaintiff had responded by submitting its bid. They issued a new request for proposals on terms substantially similar to those specified in the earlier request. Significantly, the plaintiff was advised that it would be permitted to submit a bid in response to the second request for proposals.

In its analysis of the merits of the defendants' motion to dismiss, the trial court properly considered the allegations in the plaintiff's complaint. It noted that the complaint did not allege fraud, corruption or bid rigging. It held that the plaintiff's allegation that the defendants improperly had relied on mistaken information was no different from an allegation that the rescission of the contract was based on a mistake. Such an allegation, according to the court, was not sufficient to remove the plaintiff's claim from the jurisdiction of the claims commissioner.

## II

### CLAIMS FOR EQUITABLE RELIEF

The plaintiff does not challenge the well established rule of law that, if it has a claim for damages as a result of the defendants' allegedly wrongful rescission of its contract, that claim cannot be heard in the Superior Court without the permission of the claims commissioner. It is undisputed that the plaintiff never presented its claim to the claims commissioner.

In support of its claimed entitlement to a hearing in the Superior Court, the plaintiff asked the trial court for injunctive relief or a writ of mandamus. The trial court was not persuaded by these arguments, nor are we.

### A

#### Injunctive Relief

The plaintiff has advanced two arguments to support its contention that the trial court improperly declined

to afford it injunctive relief. First, the plaintiff maintains that, in its own right, it has the right to judicial enforcement of the contract that the defendants wrongfully terminated. Second, it maintains that, acting as a private attorney general, it can compel performance because termination of the contract violates the public policy underlying our competitive bidding statutes. We disagree with both claims.[5]

The plaintiff's direct claim for injunctive relief cites a number of cases in which bid contracts have been enforced against municipalities and municipal agencies. See, e.g., *Lawrence Brunoli, Inc.* v. *Branford*, 247 Conn. 407, 722 A.2d 271 (1999); *John J. Brennan Construction Corp.* v. *Shelton*, 187 Conn. 695, 448 A.2d 180 (1982). As the defendants point out, however, the plaintiff has not cited a single case in which a claimant obtained such relief from a state agency that invoked its right to sovereign immunity.[6] Furthermore, as a general matter, a plaintiff seeking to enjoin a governmental agency must demonstrate that it has no access to the ordinary remedy of monetary relief. *Pequonnock Yacht Club, Inc.* v. *Bridgeport*, 259 Conn. 592, 598, 790 A.2d 1178 (2002). The fact that monetary claims against the state must be authorized by the claims commissioner does not make such a claim unenforceable. Standing alone, that fact did not entitle the plaintiff to equitable relief either in the form of an injunction or in the form of specific performance of its alleged contract with the defendants. See *Sullivan* v. *State*, 189 Conn. 550, 559, 457 A.2d 304 (1983) (adjudication is not warranted when relief sought "might conceivably have been obtained through

---

[5] The plaintiff also argues that the trial court improperly held that it had no subject matter jurisdiction because the plaintiff did not have standing to pursue its claim in the trial court. It has not, however, identified any statement in the decision of the trial court that would indicate that the court had based its judgment on that ground.

[6] The plaintiff did not file a reply brief and has, therefore, failed to rebut the state's description of the relevant authorities.

an alternative [statutory] procedure . . . which [the litigant] has chosen to ignore").

The plaintiff's general claim under the state bidding regulations is similarly flawed. We are not persuaded that § 4a-52-9 of the Regulations of Connecticut State Agencies,[7] which requires the state to honor its contractual obligations to contract bidders, manifests a legislative intent to waive sovereign immunity in the event of disputes about breach of contract. The plaintiff has not cited any language in the statute that addresses sovereign immunity. It has cited no case that interprets the statute as having implicitly authorized a waiver of sovereign immunity and we know of no case that so holds. As the trial court observed, the cases in which our courts have awarded equitable relief to a disappointed bidder have based their decisions on findings of fraud, corruption or favoritism in the bidding process. The plaintiff does not purport to have stated any such claim.

The plaintiff, however, also has advanced a more specific claim. It maintains that it was arbitrary, capri-

---

[7] Section 4a-52-9 of the Regulations of Connecticut State Agencies provides in relevant part: "(a) Each bid will be received with the understanding that the acceptance in writing by the Commissioner of the offer to furnish any or all of the supplies, materials, equipment or contractual services described therein shall constitute a contract between the bidder and the state. Such contract shall bind the bidder on his part to furnish and deliver the supplies, materials, equipment or contractual services at the prices given and in accordance with conditions of said accepted bid and Sections 4a-52-1 through 4a-52-22 of the Regulations of Connecticut State Agencies. Such contract shall bind the State on its part to order the supplies, materials, equipment or contractual services from such contractor, except for causes beyond reasonable control, and subject to the availability of appropriated funds, and to pay for at the contract prices all supplies, materials, equipment or contractual services ordered and delivered. . . .

"(g) The placing of a notice of award in the mail to the bidder's address given in the bid or the delivery of a notice of award to a bidder will constitute notice of acceptance of the bid or proposal. . . .

"(h) The contract may be cancelled by the Commissioner upon non-performance of the contract terms or failure of the contractor to furnish performance surety within ten days from date of request. . . ."

cious and illegal for the defendants to terminate their contractual relationship without affording the plaintiff the opportunity to demonstrate the inaccuracy of the adverse report that the defendants received from the CHRO. In such a due process analysis, the issue is not whether a state agency may rely on adverse information from another state agency. Indeed, the time period between a bid award and the preparation of a formal contract may well have been intended to allow a state agency to obtain just such information. Rather, the issue is whether the defendants violated the public policy of promoting public confidence in competitive bidding; see, e.g., General Statutes § 4a-57 (a);[8] by failing to respond to the plaintiff's request for a hearing to challenge the basis for the disqualification of its bid. See General Statutes § 4a-63 (a).[9] This is an issue of first impression.

---

[8] General Statutes § 4a-57 (a) provides in relevant part: "All purchases of, and contracts for, supplies, materials, equipment and contractual services, except purchases and contracts made pursuant to the provisions of subsection (b) of this section . . . shall be based, when possible, on competitive bids or competitive negotiation. The commissioner shall solicit competitive bids or proposals by providing notice of the planned purchase in a form and manner that the commissioner determines will maximize public participation in the competitive bidding or competitive negotiation process, including participation by small contractors, as defined in section 4a-60g, and promote competition. . . ."

[9] General Statutes § 4a-63 (a) provides: "The Commissioner of Administrative Services may disqualify any person, firm or corporation, for up to two years, from bidding on contracts with the Department of Administrative Services, pursuant to section 4a-57, for supplies, materials, equipment and contractual services required by any state agency, for one or more causes set forth under subsection (c) of this section. The commissioner may initiate a disqualification proceeding after consulting with the purchasing agency, if any, and the Attorney General and shall provide notice and an opportunity to be heard to the person, firm or corporation which is the subject of the proceeding. The commissioner shall issue a written decision within ninety days of the last date of such hearing and state in the decision the reasons for the action taken and, if the person, firm or corporation is being disqualified, the period of such disqualification. The commissioner shall send the decision to such person, firm or corporation by certified mail, return receipt requested. The written decision shall be a final decision for the purposes of sections 4-180 and 4-183."

The trial court acknowledged that one of the plaintiff's arguments for relief was that the defendants "be directed to comply with procedural safeguards, such as disclosing what information led the department to cancel the [contract]." The court rejected this claim because, in its view, "the plaintiff was not formally 'disqualified' . . . and the [defendants'] decision was confined to the immediate contract."

The defendants urge us to affirm the judgment of the trial court on a different ground. Even if the court had subject matter jurisdiction to hear the plaintiff's complaint, such an injunction cannot be issued without balancing the equities. *Moore* v. *Serafin*, 163 Conn. 1, 6, 301 A.2d 238 (1972); *Franc* v. *Bethel Holding Co.*, 73 Conn. App. 114, 145, 807 A.2d 519, cert. granted on other grounds, 262 Conn. 923, 812 A.2d 864 (2002) (appeal withdrawn October 21, 2003). In the defendants' view, even temporary injunctive relief would have exposed the defendants to the risk of federal court sanctions for noncompliance with a federal court class action settlement requiring them to provide sexual harassment training for their employees.[10] This argument is misplaced. In deciding whether to grant a motion for dismissal for lack of subject matter jurisdiction, a court does not inquire into the substantive merits or weaknesses of the allegations in the plaintiff's complaint. *Filippi* v. *Sullivan*, 273 Conn. 1, 8, 866 A.2d 599 (2005).

We conclude, nonetheless, that the trial court properly denied the plaintiff's claim for injunctive relief under the circumstances of this case. When it is granted, injunctive relief from the loss of a bid contract addresses structural failures in the bidding process. We need not decide whether the plaintiff might have

[10] See *Orr* v. *State*, United States District Court for the District of Connecticut, Docket No. 3:02CV1368 (January 20, 2004), and *Allen* v. *Armstrong*, United States District Court for the District of Connecticut, Docket No. 3:02CV1370 (January 20, 2004).

asserted a claim for injunctive relief if it had been disbarred permanently from bidding on future agency contracts because of untested representations of unsatisfactory performance in the past. That is not this case. This plaintiff "was advised [that] it would be permitted to submit a bid to the second [request for proposals]." The trial court found this fact to be dispositive and so do we.

## B

## Writ of Mandamus

The plaintiff's alternate claim is that the trial court improperly failed to exercise its statutory authority under General Statutes § 52-485 (a) to issue a writ of mandamus to compel the defendants to perform their contractual obligations to the plaintiff. A court's authority to issue such a writ is limited by the accepted principle that a writ of mandamus can only compel a governmental agency to perform duties that are ministerial. *AvalonBay Communities, Inc.* v. *Sewer Commission*, 270 Conn. 409, 422, 853 A.2d 497 (2004).

In the plaintiff's view, the rules stated in Regulations of Connecticut State Agencies §§ 4a-63-1 through 4a-63-5 describe ministerial duties that the defendants *must* perform. The plaintiff cannot prevail on this claim.[11]

As the appellant, the plaintiff has the burden of presenting us with a record enabling us to review a trial court's conclusions of law. Practice Book § 61-10. In this case, although the trial court recognized that the plaintiff sought a writ of mandamus, it nowhere

---

[11] The defendants urge us to affirm the court's ruling on mandamus on the same ground that they defended against an injunction. The defendants again claim that the terms of the bid proposal precluded a finding that the defendants had any contractual obligation to the plaintiff. As noted in footnote 2, because the trial court did not adopt either party's interpretation of the parties' contractual engagement to each other, this argument is premature.

addressed the merits of the plaintiff's claim that, because of our state competitive bidding statutes, the defendants' contractual obligations were ministerial in nature. Although the plaintiff filed a motion for articulation; see Practice Book § 66-5; it did not file a motion for review of the trial court's denial of the request for articulation. See Practice Book § 66-7. We therefore lack any basis for deciding whether the court incorrectly applied the law or could not reasonably have concluded as it did. See *Noble* v. *White*, 85 Conn. App. 233, 239, 857 A.2d 362 (2004). We do not presume error. *Brookfield* v. *Candlewood Shores Estates, Inc.*, 201 Conn. 1, 7, 513 A.2d 1218 (1986).

In sum, the trial court properly considered the remedial relief to which the plaintiff would be entitled if it could establish that the defendants violated the plaintiff's contractual and due process rights. We agree with its decision that the plaintiff's alleged injury can be remedied by an award of monetary damages. Accordingly, we also agree with its conclusion that the doctrine of sovereign immunity required the plaintiff to pursue its claim for monetary damages, in the first instance, by seeking relief from the claims commissioner. In light of this jurisdictional command, the court properly dismissed the plaintiff's complaint.

The judgment is affirmed.

In this opinion the other judges concurred.