## ROBERT CONBOY ET AL. *v.* STATE OF CONNECTICUT
## (SC 17798)

Rogers, C. J., and Norcott, Vertefeuille, Zarella and Sullivan, Js.

Argued January 14—officially released July 21, 2009

*Daniel J. Klau,* with whom were *Joseph J. Chambers* and, on the brief, *Bernard E. Jacques, Allan B. Taylor* and *Douglas W. Bartinik,* for the appellant (defendant).

*David S. Golub,* with whom was *Jonathan M. Levine,* for the appellees (plaintiffs).

*Opinion*

ROGERS, C. J. This case concerns the proper procedure for a trial court to employ in deciding a motion

to dismiss for lack of subject matter jurisdiction when jurisdictional facts are disputed by the parties. This interlocutory appeal[1] stems from the trial court's denial of a motion to dismiss, on the basis of sovereign immunity, a putative class action brought by the plaintiffs, four state employees,[2] to recover damages from the defendant, the state of Connecticut, pursuant to General Statutes § 31-51q.[3] The state claims that the court

[1] The state appealed from the ruling of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

[2] The plaintiffs, Robert Conboy, David A. Mix, Jr., Christine G. Hickey, and Vishnu R. Khade, brought this action on behalf of themselves and 2800 other similarly situated state employees. They have yet to make the requisite showings to obtain certification as a class action. See Practice Book §§ 9-7 and 9-8.

[3] General Statutes § 31-51q provides: "Any employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4, or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees as part of the costs of any such action for damages. If the court determines that such action for damages was brought without substantial justification, the court may award costs and reasonable attorney's fees to the employer."

The first amendment to the United States constitution provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

Article first, § 3, of the constitution of Connecticut provides: "The exercise and enjoyment of religious profession and worship, without discrimination, shall forever be free to all persons in the state; provided, that the right hereby declared and established, shall not be so construed as to excuse acts of licentiousness, or to justify practices inconsistent with the peace and safety of the state."

Article first, § 4, of the constitution of Connecticut provides: "Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that liberty."

Article first, § 14, of the constitution of Connecticut provides: "The citizens have a right, in a peaceable manner, to assemble for their common good,

improperly denied its motion to dismiss because the actions challenged by the plaintiffs, as a matter of law, do not fall within the scope of the waiver of sovereign immunity conferred by that statute.[4] The state argues specifically that public documents it submitted in conjunction with its motion to dismiss established unequivocally that the plaintiffs were not "discipline[d]" or "discharge[d]" as contemplated by § 31-51q, but rather, collectively were laid off in response to economic pressures, a policy decision it claims is exempted from the purview of the statute. Because we conclude that, at this stage of the proceedings, an unresolved factual dispute exists that renders consideration of the state's legal argument premature, we dismiss the appeal.[5]

The record reveals the following procedural history. The plaintiffs commenced this action on December 19, 2005. In their complaint, they alleged that they, along with 2800 other unionized state employees, were terminated from their employment with the state in January, 2003, because of their union membership and activities

and to apply to those invested with the powers of government, for redress of grievances, or other proper purposes, by petition, address or remonstrance."

[4] In its appellate brief, the state also argued that the trial court improperly denied its motion to dismiss because § 31-51q does not waive sovereign immunity in regard to suit, as opposed to liability. See *St. George* v. *Gordon*, 264 Conn. 538, 550, 825 A.2d 90 (2003); *Martinez* v. *Dept. of Public Safety*, 263 Conn. 74, 79–80, 818 A.2d 758 (2003). Prior to oral argument, however, the state withdrew this claim.

[5] On January 29, 2007, the plaintiffs filed a motion to dismiss this appeal for lack of a final judgment. "The general rule is that the denial of a motion to dismiss is an interlocutory ruling and, therefore, is not a final judgment for purposes of appeal. . . . The denial of a motion to dismiss based on a colorable claim of sovereign immunity, by contrast, is an immediately appealable final judgment because the order or action so concludes the rights of the parties that further proceedings cannot affect them." (Internal quotation marks omitted.) *Sullins* v. *Rodriguez*, 281 Conn. 128, 130 n.2, 913 A.2d 415 (2007). On March 27, 2007, this court denied the plaintiffs' motion to dismiss without prejudice and ordered the parties to address the jurisdictional issue in their appellate briefs. Because we conclude herein that the state, on the existing factual record, has failed to make a colorable claim of sovereign immunity, we now dismiss the appeal.

and their exercise of their state and federal constitutional rights, namely, freedom of speech and freedom of association. Specifically, they averred that: their union, Connecticut State Employees Association, and twelve other unions that together comprised the State Employees Bargaining Agent Coalition, were parties to various collective bargaining agreements with the state; in and after November, 2002, the state, through members of its executive branch, had sought changes to those agreements that would favor the state, particularly, concessions of existing union member rights that the unions, pursuant to statute,[6] were not obligated to forfeit; more severe concessions were demanded from unionized employees than from nonunionized employees, particularly as to health and pension benefits; the state threatened to terminate the employment of union members if the sought concessions were not made; the state followed through on that threat and terminated 2800 unionized state employees, including the plaintiffs, when those concessions were not made; only unionized employees were targeted for termination; such termination was in response to the refusal of the plaintiffs and their unions to support then Governor John Rowland (governor) in his bid for reelection; the terminations were motivated by "anti-union animus and in retaliation for the unions' and union members' exercise of their [constitutional] rights" of freedom of speech and freedom of association, specifically, their participation in and support of union activities and their choice of political candidates. The plaintiffs alleged that, because of the foregoing actions of the state, they had suffered lost earnings and emotional distress and were entitled to seek relief pursuant to § 31-51q.

On July 19, 2006, the state filed a motion to dismiss the action for lack of subject matter jurisdiction. See

---

[6] See General Statutes § 5-272 (c) (providing in relevant part that statutory obligation to bargain collectively "shall not compel either party to agree to a proposal or require the making of a concession").

Practice Book §§ 10-30 and 10-31. The state argued that, even if an action against it was authorized by § 31-51q, the circumstances under which such an action could be brought were limited and, on the facts of this case, not present. Specifically, the state claimed, "the conduct about which [the] plaintiffs complain—a policy decision to eliminate 2800 state jobs through layoffs in the midst of a massive financial crisis—is well beyond the scope of § 31-51q because the implementation of this policy decision was not a 'discharge' or 'discipline' as [contemplated by] the statute . . . ."

In support of its motion, the state did not submit to the trial court any affidavits[7] or other evidence directly pertaining to the termination of the plaintiffs' employment, but instead requested that the trial court take judicial notice of facts allegedly established by certain publicly available documents. Those documents included: the parties' collective bargaining agreement; an undated report prepared for the legislature by its office of fiscal analysis regarding revisions made to the original 2001–2003 biennial state budget in response to a deficit that had arisen; an April 1, 2003 letter to the governor from Nancy Wyman, the state comptroller (comptroller);[8] the governor's "Balanced Budget Plan," dated December 6, 2002, and selected portions of public acts passed during the 2003 legislative sessions to address the budget deficit.[9] According to the state, the

[7] Pursuant to Practice Book § 10-31 (a), a motion to dismiss for lack of subject matter jurisdiction "shall always be filed with a supporting memorandum of law, and where appropriate, with supporting affidavits as to facts not apparent on the record."

[8] Pursuant to General Statutes § 3-115, the comptroller must prepare and furnish to the governor certain monthly financial statements concerning the state's general fund, along with revenue and expenditure forecasts for the remainder of the fiscal year. The letter on which the state relied apparently was appended to the statements prepared by the comptroller for February, 2003.

[9] Also included was a provision of a public act passed in 2005 that mirrored a provision of the 2003 legislation.

foregoing documents demonstrated conclusively that the termination of the plaintiffs' employment was a policy decision made by the governor in response to budgetary pressures and, accordingly, constituted a mass layoff,[10] which is not actionable under § 31-51q.

The trial court denied the state's motion to dismiss. The court did not address directly the state's legal argument that a mass layoff cannot constitute a violation of § 31-51q. Instead, the court noted that there was a factual dispute as to the reason for the termination of the plaintiffs' employment that could not properly be resolved on a motion to dismiss, and that in deciding such a motion, it was obligated to view the allegations of the complaint most favorably to the plaintiffs.[11] The court stated: "The plaintiffs have alleged that they and other union members were terminated because of their union status; the state argues that those state employees were laid off due to budgetary considerations. These claims cannot be resolved on a motion to dismiss as the factual dispute—and there is certainly a factual dispute—is not before the court on this motion. Rather, the question is whether the plaintiffs' complaint contains sufficient allegations to fall within the purview of § 31-51q; it does, and therefore the motion to dismiss is denied." This appeal followed.

The state argues that the trial court improperly denied its motion to dismiss because the action about which

---

[10] "[L]ayoff" is defined in the parties' collective bargaining agreement as "the [i]nvoluntary, non-disciplinary separation of an employee from [s]tate service because of lack of work, economic necessity, insufficient appropriation, departmental reorganization or abolition of position."

[11] The trial court, relying on the opinions of the Appellate Court and this court in *Skinner* v. *Angliker*, 15 Conn. App. 297, 300–302, 544 A.2d 246 (1988), aff'd, 211 Conn. 370, 559 A.2d 701 (1989), as well as the language of § 31-51q, first had rejected the state's claim that § 31-51q did not constitute a waiver of sovereign immunity as to suit, but only as to liability. As previously noted, the state has abandoned any challenge to this preliminary determination of the trial court.

the plaintiffs complain—a mass layoff of 2800 workers due to economic considerations—as a matter of law does not constitute the impermissible type of discharge or discipline prohibited by § 31-51q. According to the state, the documents it cited in support of its motion to dismiss established conclusively that the plaintiffs' loss of employment, contrary to the allegations of the complaint, was part of such a layoff and, therefore, that there was no violation of § 31-51q that would trigger a waiver of sovereign immunity. The state further claims that the general context surrounding the plaintiffs' loss of employment demonstrates clearly that the plaintiffs were laid off due to a policy decision of the governor to reduce the size of the state workforce in the face of a fiscal crisis, and such a decision does not amount to discipline or discharge within the meaning of § 31-51q. We conclude that, because, on the record presented to the trial court, a factual dispute existed over the reason for the plaintiffs' loss of employment, the trial court properly declined to address the state's legal argument and denied its motion to dismiss.[12]

The applicable legal principles are well established. "[W]e have long recognized the validity of the common-law principle that the state cannot be sued without its consent . . . ." (Internal quotation marks omitted.) *Cox* v. *Aiken*, 278 Conn. 204, 211, 897 A.2d 71 (2006). Nevertheless, a plaintiff may surmount this bar against suit if, inter alia, he can demonstrate that "the legislature, either expressly or by force of a necessary implication, statutorily waived the state's sovereign immunity . . . ." (Internal quotation marks omitted.) Id., 212. Even when there is an express statutory waiver of

---

[12] As we explain herein, to the extent the trial court reasoned that a factual dispute *never* may be resolved on a motion to dismiss, the court was mistaken. Because the circumstances requiring resolution of the motion were not present at the time of the court's ruling, however, we conclude that any error in that regard is of no consequence.

immunity, however, the plaintiff's complaint must allege a claim falling within the scope of that waiver. See *Kozlowski* v. *Commissioner of Transportation*, 274 Conn. 497, 502, 876 A.2d 1148 (2005); see also *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.*, 239 Conn. 93, 101–102, 680 A.2d 1321 (1996) ("[w]hen the state waives . . . immunity by statute . . . a party attempting to sue under the legislative exception must come clearly within its provisions" [internal quotation marks omitted]).

Lack of a statutory waiver of immunity is a jurisdictional defect properly raised by a motion to dismiss. *Kelly* v. *University of Connecticut Health Center*, 290 Conn. 245, 252, 963 A.2d 1 (2009); see also Practice Book § 10-31 (a) (1). "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo." (Internal quotation marks omitted.) *Filippi* v. *Sullivan*, 273 Conn. 1, 8, 866 A.2d 599 (2005). In undertaking this review, we are mindful of the well established notion "that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Amodio* v. *Amodio*, 247 Conn. 724, 728, 724 A.2d 1084 (1999).

Trial courts addressing motions to dismiss for lack of subject matter jurisdiction pursuant to § 10-31 (a) (1) may encounter different situations, depending on the status of the record in the case. As summarized by a federal court discussing motions brought pursuant to

the analogous federal rule,[13] "[l]ack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming* v. *United States*, 281 F.3d 158, 161 (5th Cir. 2001). Different rules and procedures will apply, depending on the state of the record at the time the motion is filed.

When a trial court decides a jurisdictional question raised by a pretrial motion to dismiss on the basis of the complaint alone, "it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *Filippi* v. *Sullivan*, supra, 273 Conn. 8; see also *Shay* v. *Rossi*, 253 Conn. 134, 140, 749 A.2d 1147 (2000), overruled in part by *Miller* v. *Egan*, 265 Conn. 301, 325, 828 A.2d 549 (2003); see, e.g., *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.*, supra, 239 Conn. 99–100 (deciding jurisdictional question on pleadings alone).

In contrast, if the complaint is supplemented by *undisputed facts* established by affidavits submitted in support of the motion to dismiss; Practice Book § 10-31 (a);[14] other types of undisputed evidence; see, e.g., *Kozlowski* v. *Commissioner of Transportation*, supra, 274 Conn. 504 n.7 (photographs and deposition testimony); *Ferreira* v. *Pringle*, 255 Conn. 330, 336, 766 A.2d

---

[13] See Fed. R. Civ. P. 12 (b) (1) (providing that defense of lack of subject matter jurisdiction may be raised by motion).

[14] "[A]ffidavits are insufficient to determine the facts unless . . . they disclose that no genuine issue as to a material fact exists." (Internal quotation marks omitted.) *Standard Tallow Corp.* v. *Jowdy*, 190 Conn. 48, 56, 459 A.2d 503 (1983).

400 (2001) (lease agreement); *Shay* v. *Rossi*, supra, 253 Conn. 139 n.7 (official records of department of children and families); and/or public records of which judicial notice may be taken; *Cox* v. *Aiken*, supra, 278 Conn. 217 (state employees' collective bargaining agreement); the trial court, in determining the jurisdictional issue, may consider these supplementary undisputed facts "and need not conclusively presume the validity of the allegations of the complaint." *Shay* v. *Rossi*, supra, 140. Rather, those allegations are "tempered by the light shed on them by the [supplementary undisputed facts]." Id., 141; see also *Barde* v. *Board of Trustees*, 207 Conn. 59, 62, 539 A.2d 1000 (1988). If affidavits and/or other evidence submitted in support of a defendant's motion to dismiss conclusively establish that jurisdiction is lacking, and the plaintiff fails to undermine this conclusion with counteraffidavits; see Practice Book § 10-31 (b); or other evidence, the trial court may dismiss the action without further proceedings. See, e.g., *Ferreira* v. *Pringle*, supra, 344–45; *Amore* v. *Frankel*, 228 Conn. 358, 364, 367–69, 636 A.2d 786 (1994). If, however, the defendant submits either no proof to rebut the plaintiff's jurisdictional allegations; *Connecticut Hospital Assn.* v. *Pogue*, 870 F. Sup. 444, 447 (D. Conn. 1994); or only evidence that fails to call those allegations into question; *Ostow & Jacobs, Inc.* v. *Morgan-Jones, Inc.*, 189 F. Sup. 697, 698 (S.D.N.Y. 1960); the plaintiff need not supply counteraffidavits or other evidence to support the complaint, but may rest on the jurisdictional allegations therein. See id.

Finally, where a jurisdictional determination is dependent on the resolution of a critical factual dispute, it cannot be decided on a motion to dismiss in the absence of an evidentiary hearing to establish jurisdictional facts. *Gordon* v. *H.N.S. Management Co.*, 272 Conn. 81, 92, 861 A.2d 1160 (2004) ("[w]hen issues of fact are necessary to the determination of a court's

jurisdiction . . . due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses" [internal quotation marks omitted]); *Schaghticoke Tribal Nation* v. *Harrison*, 264 Conn. 829, 833, 826 A.2d 1102 (2003) (same).[15] Likewise, if the question of jurisdiction is intertwined with the merits of the case, a court cannot resolve the jurisdictional question without a hearing to evaluate those merits.[16] *Lampasona* v. *Jacobs*, 209 Conn. 724, 728, 553 A.2d 175 ("[i]n some cases . . . it is necessary to examine the facts of the case to determine whether it is within a general class that the court has power to hear"), cert. denied, 492 U.S. 919, 109 S. Ct. 3244, 106 L. Ed. 2d 590 (1989).[17] An evidentiary hearing is necessary because "a court cannot make a critical factual [jurisdictional] finding based on memoranda and documents submitted by the

[15] A preliminary evidentiary hearing ordinarily will suffice where the jurisdictional issue is distinct and severable from the merits of the action, for example, when personal jurisdiction is called into question.

[16] When the jurisdictional facts are intertwined with the merits of the case, the court may in its discretion choose to postpone resolution of the jurisdictional question until the parties complete further discovery or, if necessary, a full trial on the merits has occurred.

[17] Federal courts, as a rule, disallow interlocutory appeals from the denial of motions to dismiss when there are disputed facts underlying the issue of immunity. The United States Court of Appeals for the Second Circuit has explained: "Denials of motions to dismiss on grounds of immunity . . . are not [immediately] appealable . . . unless the immunity defense can be decided solely as a matter of law"; *United States* v. *Board of Education*, 893 F.2d 498, 502 (2d Cir. 1990); "in light of the record on appeal." (Internal quotation marks omitted.) *Almonte* v. *Long Beach*, 478 F.3d 100, 105 (2d Cir. 2007). "When . . . resolution of [an] immunity defense depends upon disputed factual issues—not hinging on issues of law—an immediate appeal may not be taken. In such a case, appellate review must await resolution of the factual issues at trial. . . . The reason for this distinction is plain. When factual issues are present, the district court order does not conclusively determine the disputed question." (Citations omitted.) *Hill* v. *New York*, 45 F.3d 653, 660 (2d Cir. 1995); see also *United States* v. *Board of Education*, supra, 503 ("[w]here the applicability of the immunity [defense] cannot be decided from the face of the pleadings but requires some discovery, the denial of a motion to dismiss on the immunity ground is not appealable prior to discovery").

parties." *Coughlin* v. *Waterbury*, 61 Conn. App. 310, 315, 763 A.2d 1058 (2001).[18]

Returning to the present matter, we conclude that the trial court properly denied the state's motion to dismiss because, on the record before the court, an open factual dispute remained as to the motivations underlying the termination of the plaintiffs' employment.[19] Because the applicability of the state's jurisdictional argument turned on a particular resolution of that factual dispute, the argument was raised prematurely. Under the facts of this case, it is likely that a determination of the state's motivations cannot be made until there is a full trial on the merits of the action. As we previously have noted, "defendants' states of mind and motives [are] facts that . . . are not ordinarily subject to determination on the basis of documentary proof alone." *Shay* v. *Rossi*, supra, 253 Conn. 174.

---

[18] The varied procedures potentially applicable on a motion to dismiss for want of jurisdiction arise from the fact that the motion to erase and the plea in abatement available under our former rules of practice; see Practice Book, 1963, §§ 93 and 94; were combined under Practice Book § 10-30, the current rule of practice governing motions to dismiss. See *Knipple* v. *Viking Communications, Ltd.*, 236 Conn. 602, 608, 674 A.2d 426 (1996); *Pellegrino* v. *O'Neill*, 193 Conn. 670, 672 n.4, 480 A.2d 476, cert. denied, 469 U.S. 875, 105 S. Ct. 236, 83 L. Ed. 2d 176 (1984). "A motion to erase admitted all facts which [were] well pleaded, invoke[d] the existing record and [was required to] be decided upon that alone. . . . The plea in abatement was the required pleading when an alleged jurisdictional defect could not be determined on the record. . . . Under a plea in abatement, once issues of fact were joined, the trial court was required to conduct an evidentiary hearing to determine the disputed facts necessary to decide the jurisdictional issue." (Citations omitted; internal quotation marks omitted.) *Knipple* v. *Viking Communications, Ltd.*, supra, 608.

[19] The state's assertion, pressed at oral argument before this court, that the issue of motive is irrelevant in the context of a mass layoff for economic reasons, is difficult to understand because its claim that the plaintiffs' terminations were due to such a mass layoff *assumes* a particular motive. Moreover, it is clear from the language of § 31-51q that an employer's improper motive is the sine qua non of a claim under that section. See also *D'Angelo* v. *McGoldrick*, 239 Conn. 356, 360–61, 685 A.2d 319 (1996) (to prevail under § 31-51q, plaintiff must show causal connection between discipline or discharge and exercise of constitutional rights).

Here, the documents submitted by the state in support of its motion to dismiss demonstrate only that there was a fiscal crisis around the time the plaintiffs' employment was terminated and that some layoffs of state employees had occurred. At best, the documents raise an issue of fact and are not sufficient to refute the well pleaded allegations of the complaint that the termination of the plaintiffs' employment was threatened and effected in retaliation for their engaging in constitutionally protected activities.[20] In short, the state, in pressing its motion to dismiss, relied solely on general background information as to the economic climate and budgetary challenges existing in fiscal year 2003, and provided no evidence to contradict specifically the allegations in the complaint supporting jurisdiction. It submitted no affidavits from, for example, individuals directly involved in the decision(s) to terminate the

[20] Specifically, the report from the office of fiscal analysis discusses the deficit and legislative revisions to the 2001–2003 budget. It includes a section captioned, "The Governor's Proposed Mid-term Budget Adjustments for [Fiscal Year 2003]," but that section does not mention specifically any layoffs of state employees and does not otherwise allude to the plaintiffs. The April 1, 2003 letter from the comptroller refers to her September 3, 2002 communication to the governor reporting that there was a budget deficit in excess of 1 percent, which required the governor to submit a deficit mitigation plan. See General Statutes § 4-85 (b) (2). The letter notes the governor's "proposed elimination of funding for unsettled labor contracts," that is "still under consideration," but does not discuss layoffs particularly or mention that the termination of the plaintiffs' employment already had occurred in conjunction with the governor's proposal. The governor's deficit mitigation plan, dated December 6, 2002, consists of a list of line item spending reductions and revenue increases, but does not discuss explicitly impending layoffs of any state employees, particularly the plaintiffs. The public acts cited by the state made modifications to the fiscal year 2003 budget and, in provisions pertaining to an early retirement incentive program and associated labor force refills, made general references to state employees who were "laid off" between November 1, 2002, and June 30, 2003. Even assuming these general references are in regard to the termination of the plaintiffs' employment, we disagree with the state that the legislature's after the fact characterization of the terminations and provision of beneficial measures favoring laid off employees constitute conclusive evidence of the reasoning underlying decisions previously made by executive branch officials.

plaintiffs' employment explaining how those decisions were reached, no testimony to link the general budget adjustments suggested by the public documents to the particular loss of employment suffered by the plaintiffs, no employment records for the plaintiffs explaining the reasons for the termination of their employment or any other evidence to controvert the specific allegations of the complaint as to improper retaliatory action.[21] Furthermore, there is no indication in the record that the state requested a hearing to present more specific, probative evidence.

In sum, a critical factual dispute remains as to the reason for the termination of the plaintiffs' employment, and that dispute could not be resolved on the limited record before the trial court. Accordingly, the trial court properly declined to address the state's jurisdictional argument, because it was based on facts that had not been established, and denied the state's motion to dismiss. On the basis of the foregoing, we conclude that there is no colorable claim of sovereign immunity warranting an interlocutory appeal from the trial court's denial of the state's motion to dismiss.

The appeal is dismissed.

In this opinion the other justices concurred.

---

[21] Because the state failed to submit evidence to rebut the plaintiffs' allegations of retaliatory termination and instead offered only general background information, the plaintiffs were not obligated to respond, but could rest on the allegations of their complaint. See *Ostow & Jacobs, Inc.* v. *Morgan-Jones, Inc.*, supra, 189 F. Sup. 698.