******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# ALAN FISCHER ET AL. *v.* PEOPLE'S UNITED BANK, N.A., ET AL.
## (AC 44872)

Bright, C. J., and Prescott and Pellegrino, Js.

*Syllabus*

The plaintiffs, L Co., a mortgagor, F, its guarantor, and F Co., F's real estate company, sought to recover damages from the defendant bank and two of its officers after the bank rescinded its offer to refinance L Co.'s mortgage and L Co. defaulted on that mortgage. F commenced this action on behalf of all three plaintiffs, filing a five count complaint. Counts one through four were brought by all three plaintiffs and alleged breach of contract, breach of the implied covenant of good faith and fair dealing, violations of the Connecticut Unfair Trade Practices Act (§ 42-110a et seq.), and tortious interference with business expectancies, respectively. Count five was brought by F only and alleged negligent infliction of emotional distress. The trial court granted the defendants' motion to dismiss, dismissing for lack of standing all claims brought by L Co. and the claims brought by F and F Co. that were set forth in the first, second, and third counts of the complaint. On the plaintiffs' appeal to this court, *held*:

1. The portion of the appeal that pertained to the claims of F and F Co. was dismissed because they did not appeal from a final judgment: the trial court's ruling with respect to F and F Co. was only a partial judgment because it did not fully dispose of counts four and five of the complaint; accordingly, this court did not have jurisdiction to review the appeal with respect to their claims.

2. The trial court properly determined that L Co. lacked standing to bring this action and, accordingly, the court properly dismissed the claims brought by L Co. for a lack of jurisdiction: L Co. failed to meet its burden to establish that F, acting alone on behalf of L Co.'s general partner, A Co., was legally authorized to commence the action on behalf of L Co., as L Co.'s partnership agreement granted A Co., a member managed limited liability company, full management and control over L Co., and, although F was one of the three members of A Co., because the decision to commence litigation on behalf of L Co. was not within the scope of A Co.'s ordinary business and was a decision that affected the policy and management of A Co., the authorization of A Co.'s other two members was required to commence litigation, which was not forthcoming; moreover, F's management responsibilities in his role as property manager of the mortgaged property and his statements asserting that he was the sole member of A Co. to carry out operations on behalf of L Co. did not undermine the clear and unambiguous language of L Co.'s partnership agreement, which granted A Co. the exclusive right to bring an action on L Co.'s behalf, or A Co.'s operating agreement, which required the unanimous consent of A Co.'s members for decisions affecting the policy and management of A Co. and those outside the scope of A Co.'s ordinary business; furthermore, L Co.'s partnership agreement and A Co.'s operating agreement prohibited A Co. from removing itself from its role as L Co.'s general partner and from delegating to F its exclusive control and management of L Co., and there was no support in the record that any such delegation had occurred.

Argued September 6—officially released November 8, 2022

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Ansonia-Milford, where the court, *Pierson, J.*, granted the defendants' motion to dismiss and rendered judgment thereon, from which the plaintiffs appealed to this court. *Appeal dismissed in part; affirmed.*

*Laurence V. Parnoff, Jr.*, and *Laurence V. Parnoff, Sr.*, filed a brief for the appellants (plaintiffs).

*James T. Shearin*, with whom were *Dana M. Hrelic*, and, on the brief, *Potoula Tournas*, for the appellees (defendants).

*Opinion*

PRESCOTT, J. This appeal arises out of an action brought by the plaintiffs, Alan Fischer, Fischer Real Estate, Inc., and 1730 State Street Limited Partnership (1730 LP), against the defendants, People's United Bank, N.A. (People's United), and two of its officers, Kenneth Nuzzolo and Virgilio Lopez.[1] The underlying action was brought after People's United, 1730 LP's mortgage lender, rescinded its offer to refinance a mortgage executed by 1730 LP in 2010 (2010 mortgage) on real property located at 1730 Commerce Drive in Bridgeport (property), following which 1730 LP defaulted on the 2010 mortgage.

The plaintiffs appeal from the judgment of the trial court granting the defendants' motion to dismiss. The trial court held that it lacked subject matter jurisdiction over all counts of the operative five count complaint brought by 1730 LP because 1730 LP was not legally authorized to bring the underlying action, thereby depriving it of standing. The court also held that Fischer and Fischer Real Estate, Inc., lacked standing to bring the first, second, and third counts of the complaint because Fischer and Fischer Real Estate, Inc., did not suffer a direct injury from the defendants' actions rescinding the mortgage commitment letter and, thus, did not have standing to bring those counts.

The plaintiffs claim on appeal that the court improperly held that 1730 LP lacked standing because, contrary to the court's determination, Fischer had authority under the relevant corporate governance documents to permit 1730 LP to commence the underlying action. The plaintiffs also claim on appeal that Fischer and Fischer Real Estate, Inc., had standing to bring counts one, two, and three because Fischer and Fischer Real Estate, Inc., suffered a direct injury from the defendants' actions separate from the injury suffered by 1730 LP. On appeal, prior to oral argument, this court ordered the parties to file supplemental briefs addressing whether Fischer and Fischer Real Estate, Inc., appealed from a final judgment because two of the counts brought by them were not disposed of in the trial court's judgment of dismissal and thereby remain pending in the trial court.

We conclude that (1) the judgment dismissing some, but not all, counts of the complaint brought by Fischer and Fischer Real Estate, Inc., is not an appealable final judgment, and (2) the court properly dismissed all counts brought by 1730 LP for a lack of subject matter jurisdiction because 1730 LP's general partner did not authorize the commencement of the action against the defendants. Accordingly, we dismiss the appeal as it pertains to Fischer and Fischer Real Estate, Inc., and affirm the court's judgment of dismissal as it relates to the claims brought by 1730 LP.

The following facts, which are either undisputed or are taken from the underlying complaint, and procedural history are relevant to our resolution of the appeal. Fischer is a licensed real estate broker who owns and operates Fischer Real Estate, Inc., and is the guarantor of the 2010 mortgage executed by 1730 LP on the property.

As provided in 1730 LP's partnership agreement, AJC Management, LLC (AJC), a limited liability company, is the general partner of 1730 LP and "ha[s] full, exclusive and complete discretion" to manage and control 1730 LP. This includes the general partner's right to "[c]ompromise, submit to arbitration, sue or defend any and all claims for or against [1730 LP]." The agreement further restricts AJC from removing itself, or being removed, from its role as general partner. Fischer is one of three members of AJC. The other members of AJC are Jefferson Scinto and Christian Scinto.

Under AJC's operating agreement, which controls the rights and obligations of its members, "[a]ll decisions affecting the policy and management of [AJC] shall be made by unanimous consent of the Members." The operating agreement also limits the purpose and scope of AJC's business, stating in relevant part: "The business . . . shall be limited to (i) the sale, acquisition, ownership, development, operation, lease, investment and management of real properties . . . . The business of the Company shall not be extended by implication or otherwise beyond the scope of this Agreement."

On behalf of AJC, Fischer has managed the property owned by 1730 LP since 1998. Fischer's duties on behalf of AJC have included acting as the property's sole property manager and negotiating and securing mortgages for the property.

On or about December, 2019, Fischer began negotiating with People's United, through Lopez, to refinance the 2010 mortgage loan on the property. As a result of the negotiations, People's United offered to refinance the 2010 mortgage under new terms, which would include lower interest rates, and to extend a new loan for environmental remedial costs. People's United confirmed these offers in a mortgage commitment letter dated July 28, 2020. Thereafter, People's United sent Fischer a checklist of the documents it required in order to formalize the new loan and refinance the 2010 mortgage.

The initial checklist of required documents included the 1730 LP partnership agreement. After People's United received and reviewed the 1730 LP partnership agreement, it requested that Fischer provide a resolution from AJC, 1730 LP's general partner, that was signed by all of AJC's members and stated that AJC authorized the loan and execution of the closing documents. Due to a dispute between the members of AJC,

People's United never received a resolution that was signed by all members of AJC.[2] On August 24, 2020, People's United notified Fischer that the July 28, 2020 commitment letter was rescinded due to Fischer's failure to obtain an acceptable resolution from AJC. As a result of the unsuccessful refinancing of the property's loan, the 2010 mortgage was declared to be in default on August 26, 2020.[3]

Following the default on the 2010 mortgage, the plaintiffs initiated the underlying action. The plaintiffs' operative complaint alleged that, as a result of People's United having rescinded its refinancing offer, the plaintiffs suffered financial damages from 1730 LP's resulting mortgage default. The complaint contained five counts. Counts one, two, three, and four were brought by all three plaintiffs and alleged breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and tortious interference with business expectancies. Count five was brought by Fischer only and alleged negligent infliction of emotional distress. Fischer commenced the action on behalf of all three plaintiffs. The remaining members of AJC, however, never authorized AJC to bring an action on behalf of 1730 LP.

On January 19, 2021, the defendants filed a motion to dismiss all counts of the complaint brought on behalf of 1730 LP and counts one, two, and three in their entirety. The defendants argued that the court did not have subject matter jurisdiction over those counts because the plaintiffs lacked standing. In support, the defendants filed a memorandum of law with exhibits, which included an affidavit from Christian Scinto. In response, the plaintiffs filed an objection to the defendants' motion to dismiss, a memorandum of law in opposition to the motion to dismiss with supporting exhibits, and an affidavit from Fischer. Subsequently, the defendants submitted a reply memorandum in support of their motion to dismiss. In addition to the affidavits from Christian Scinto and Fischer, the record before the court included, in relevant part, copies of the 1730 LP partnership agreement and AJC's operating agreement.

On August 3, 2021, the court issued a memorandum of decision granting the defendants' motion to dismiss all counts brought by 1730 LP and counts one, two, and three as to all plaintiffs. The court held that the factual allegations of the complaint, supplemented by the undisputed facts in the record, demonstrated that 1730 LP lacked standing to maintain the claims it brought and that Fischer and Fischer Real Estate, Inc., lacked standing with respect to the first, second, and third counts of the complaint. The fourth and fifth counts of the complaint were not attacked in the motion to dismiss or addressed by the court in its ruling.

With respect to 1730 LP's standing to bring the action, the court held that AJC, in its role as general partner, had the sole authority to initiate an action by 1730 LP and that AJC, acting through a single member, was not legally authorized to commence the action against the defendants. Specifically, the court noted that AJC's operating agreement required unanimous consent from its members for an individual member to act outside the ordinary course of business or to engage in actions that affect the policy and management of AJC. The court was not persuaded by Fischer's argument that suing the property owner's mortgage lender was a common action for real estate companies and, therefore, he had authority to initiate the action as the property manager and without the unanimous consent of AJC's members. Instead, the court relied on the operating agreement's language that limited the scope and purpose of AJC to matters relating to the sale and management of real property and concluded that Fischer's filing of the action against the defendants did not fall within the ordinary course of business. The court also held that, even though AJC's operating agreement does not specifically address a single member's authority to commence litigation on behalf of AJC, any ambiguity is resolved by the Connecticut Uniform Limited Liability Company Act (CULLCA), General Statutes § 34-243 et seq., which provides that, at a minimum, the affirmative vote or consent of a majority of a company's members would be required.[4] It is undisputed that Fischer acted without the consent or affirmative vote of AJC's other two members.[5] The court concluded that Fischer acted alone in bringing the action and that, individually, he lacked authority to act on behalf of AJC to commence litigation on behalf of 1730 LP, pursuant to both the controlling agreements and CULLCA.

The court next addressed Fischer's and Fischer Real Estate, Inc.'s standing to maintain the first, second, and third counts of the amended complaint. The court held that Fischer and Fischer Real Estate, Inc., lacked standing to bring the first count that alleged a breach of the mortgage refinance agreement. The court noted that, regardless of Fischer's status as a guarantor of the 2010 mortgage, Fischer and Fischer Real Estate, Inc., were not parties to the 2010 mortgage and did not suffer any injury unique from the injury allegedly suffered by 1730 LP. In regard to the second and third counts, which asserted a breach of the covenant of good faith and fair dealing and CUTPA violations, the court noted that both counts relied on the first count's breach of contract claim and, because they did not suffer an injury unique from the injury suffered by 1730 LP, Fischer and Fischer Real Estate, Inc., lacked standing. The plaintiffs filed the present appeal.

On August, 17, 2022, this court, sua sponte, ordered the parties to file supplemental briefs "addressing

whether this appeal should be dismissed as to the plaintiffs [Fischer] and Fischer Real Estate, Inc., for a lack of a final judgment because counts four and five of the [operative complaint] . . . were not disposed of by the August 3, 2021 judgment of dismissal and therefore remain pending in the trial court." Subsequently, the parties filed supplemental briefs. The plaintiffs acknowledged that "the judgment disposed of only the part of the complaint dealing with all the claims of [Fischer and Fischer Real Estate, Inc.]" but, nonetheless, argued that this court should review the trial court's judgment as it pertains to Fischer and Fischer Real Estate, Inc., on its merits.[6] In response, the defendants argued that the appeal should be dismissed as to Fischer and Fischer Real Estate, Inc., because there was no final judgment as to those plaintiffs.

I

Because it implicates the jurisdiction of this court to hear the appeal, we first consider whether the trial court's decision granting the motion to dismiss with respect to Fischer and Fischer Real Estate, Inc., constitutes a final judgment. See *Woodbury Knoll, LLC* v. *Shipman & Goodwin, LLP*, 305 Conn. 750, 755, 48 A.3d 16 (2012) (addressing first issue of whether trial court's order is appealable final judgment because it implicates court's subject matter jurisdiction). We conclude that because the court's decision did not dispose of all counts of the complaint with respect to Fischer and Fischer Real Estate, Inc., those plaintiffs did not appeal from a final judgment. Accordingly, we dismiss that portion of the appeal that pertains to them.

We begin by setting forth the relevant legal principles. "Unless otherwise provided by law, the jurisdiction of our appellate courts is restricted to appeals from final judgments. . . . The appellate courts have a duty to dismiss, even on [their] own initiative, any appeal that [they lack] jurisdiction to hear. . . . Accordingly, a final judgment issue is a threshold matter that must always be resolved prior to addressing the merits of an appeal. . . . Whether an appealable final judgment has occurred is a question of law over which our review is plenary. . . .

"It is axiomatic that [a] judgment that disposes of only a part of a complaint is not a final judgment. . . . Accordingly, an appeal challenging an order issued during the pendency of a civil action ordinarily must wait until there has been a final disposition as to all counts of the underlying complaint. Our rules of practice, however, set forth certain circumstances under which a party may appeal from a judgment disposing of less than all of the counts of a complaint. Thus, a party may appeal if the partial judgment disposes of all causes of action against a particular party or parties . . . ." (Citations omitted; internal quotation marks omitted.) *Krausman* v. *Liberty Mutual Ins. Co.*, 195 Conn. App.

682, 687–88, 227 A.3d 91 (2020); see also Practice Book § 61-3 ("[a] judgment disposing of only a part of a complaint, counterclaim or cross complaint is a final judgment if that judgment disposes of all causes of action in that complaint, counterclaim or cross complaint brought by or against a particular party or parties").

The complaint in the underlying action contains five counts. Counts one, two, three, and four were brought by all three of the plaintiffs. Count five was brought only by Fischer. The trial court dismissed all counts brought by 1730 LP and counts one, two, and three in their entirety. The court's ruling thus disposed of all causes of action involving 1730 LP, rendering it a final judgment under the rules set forth in Practice Book § 61-3. In contrast, the court's ruling was only a partial judgment with respect to Fischer and Fischer Real Estate, Inc., because it did not fully dispose of counts four and five. Because all causes of action brought by Fischer and Fischer Real Estate, Inc., have not been disposed of, there is no final judgment with respect to those parties.[7] This court is deprived of jurisdiction to review this appeal with respect to the claims brought by Fischer and Fischer Real Estate, Inc. Accordingly, that portion of this appeal is dismissed.

II

We now turn to 1730 LP's claim that the court improperly granted the motion to dismiss on the basis that 1730 LP lacked standing to bring the action. Specifically, 1730 LP argues that "[t]he misinterpretation of the [AJC operating agreement] and [the 1730 LP partnership agreement]" led to an improper determination that 1730 LP lacked standing to bring this action. We are not persuaded and agree with the trial court that 1730 LP did not have standing because Fischer was not legally authorized to commence the action on behalf of AJC without the unanimous consent of AJC's members. Accordingly, we conclude that the court was deprived of jurisdiction over all counts brought by 1730 LP and that the court properly dismissed those counts as they pertained to 1730 LP.

We begin our analysis by setting forth the applicable standard of review. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the trial court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . Factual findings underlying the court's decision, however, will not be disturbed unless they are clearly erroneous. . . . The applicable standard of review for the denial of a motion to dismiss, therefore, generally turns on whether the appellant seeks to challenge the legal conclusions

of the trial court or its factual determinations." (Citation omitted; internal quotation marks omitted.) *Hayes Family Ltd. Partnership* v. *Glastonbury*, 132 Conn. App. 218, 221, 31 A.3d 429 (2011).

To the extent that we are called on to interpret the partnership or operating agreements, our standard of review is also well established. "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact [subject to the clearly erroneous standard of review] . . . [when] there is definitive contract language, the determination of what the parties intended by their . . . commitments is a question of law [over which our review is plenary] . . . and we must decide whether [the court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Citation omitted; internal quotation marks omitted.) *Alpha Beta Capital Partners, L.P.* v. *Pursuit Investment Management, LLC*, 193 Conn. App. 381, 403, 219 A.3d 801 (2019), cert. denied, 334 Conn. 911, 221 A.3d 446 (2020), and cert. denied, 334 Conn. 911, 221 A.3d 446 (2020).

In the present case, 1730 LP challenges the court's interpretation of the relevant partnership and operating agreements as it relates to the court's ultimate conclusion that Fischer lacked authority to commence litigation on behalf of AJC and, in turn, 1730 LP. Thus, our review is plenary. See id. The following legal principles are relevant to our resolution of this claim.

"[L]ack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. . . . Different rules and procedures will apply, depending on the state of the record at the time the motion is filed. When a trial court decides a jurisdictional question raised by a pretrial motion to dismiss on the basis of the complaint alone, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . In contrast, if the complaint is supplemented by undisputed facts established by affidavits submitted in support of the motion to dismiss . . . [or] other types of undisputed evidence . . . the trial court, in determining the jurisdictional issue, may consider these supplementary undisputed facts and need not conclusively presume the validity of the allegations of the complaint. . . . Rather, those allegations are tempered by the light shed on them by the [supplementary undisputed facts]. . . . If affidavits and/or other evidence submitted in support of a defendant's motion to dismiss conclusively establish that jurisdiction is lack-

ing, and the plaintiff fails to undermine this conclusion with counteraffidavits . . . or other evidence, the trial court may dismiss the action without further proceedings." (Citations omitted; emphasis omitted; footnote omitted; internal quotation marks omitted.) *Conboy* v. *State*, 292 Conn. 642, 651–52, 974 A.2d 669 (2009).

"As we also have held, [i]t is a basic principle of law that a plaintiff must have standing for the court to have jurisdiction. Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has . . . some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . The standing requirement is designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . To fulfill these goals, the standing doctrine requires a plaintiff to demonstrate two facts. First, the complaining party must be a proper party to request adjudication of the issues. . . . Second, the person or persons who prosecute the claim on behalf of the complaining party *must have authority to represent the party.* . . .

"A complaining party ordinarily can show that it is a proper party when it makes a colorable claim of [a] direct injury [it] has suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy. . . . To demonstrate authority to sue, however, it is not enough for a party merely to show a colorable claim to such authority. Rather, the party whose authority is challenged has the burden of convincing the court that the authority exists. . . . The burden of proof for questions of authority is higher than that for questions of propriety because the former questions are more important. Lawsuits must be authorized not only to ensure that the litigants fairly and vigorously represent the party's views . . . but also because, *if unauthorized lawsuits were allowed to proceed, future rights of the named parties might be severely impaired.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *Community Collaborative of Bridgeport, Inc.* v. *Ganim*, 241 Conn. 546, 552–54, 698 A.2d 245 (1997).

In the present case, it is not disputed that 1730 LP is the proper party to request adjudication of the causes of action alleged in the complaint. Therefore, the only question before this court is whether Fischer, acting alone on behalf of AJC, had authority to commence the action by 1730 LP.

The defendants' motion to dismiss was supplemented by undisputed facts, and the plaintiffs supplied a count-

eraffidavit in opposition to the motion to dismiss. Thus, the operative complaint, the undisputed facts that were put forth as evidence in support of the defendants' motion to dismiss, and Fischer's counteraffidavit must all be considered to determine whether a lack of jurisdiction has been conclusively established. See *Conboy* v. *State*, supra, 292 Conn. 651–52. Because 1730 LP's authority to bring the action is challenged, it bears the burden of establishing that authority exists. See *Community Collaborative of Bridgeport, Inc.* v. *Ganim*, supra, 241 Conn. 554. The 1730 LP partnership agreement and the AJC operating agreement conclusively establish that 1730 LP lacked authority to commence the action; Fischer's counteraffidavit fails to undermine this conclusion. We conclude that 1730 LP did not meet its burden in establishing that Fischer, acting alone on behalf of AJC, was legally authorized to commence litigation against 1730 LP's mortgage lender.

To resolve this claim, we first consider the operative complaint. We need not conclusively presume the validity of the allegations in the complaint and, instead, must consider them in light of the undisputed facts in the record. See *Conboy* v. *State*, supra, 292 Conn. 651–52. The operative complaint alleges that "AJC delegated its management responsibility for the operation of AJC and the property to [Fischer] pursuant to the agreement between the members of AJC." The complaint also states that Fischer continually has managed operations of 1730 LP's property since 1998 as its sole property manager. We next consider these allegations in light of the undisputed facts in the record, particularly 1730 LP's partnership agreement and AJC's operating agreement.

The 1730 LP partnership agreement sets forth who has the rights and powers to control 1730 LP. See General Statutes § 34-9 (10) (general partner is "a person who has been admitted to a limited partnership as a general partner in accordance with the partnership agreement"); General Statutes § 34-10 (3) (partnership agreement shall set forth name and address of each general partner); see also General Statutes § 34-17 (a) ("[e]xcept as provided in this chapter or in the partnership agreement, a general partner of a limited partnership shall have all the rights and powers . . . of a partner in a partnership"). The partnership agreement names AJC as its "[g]eneral [p]artner." The partnership agreement further grants AJC the "full, exclusive and complete discretion in the management and control of [1730 LP] . . . . Such discretion shall include, without limitation, the right to . . . [c]ompromise, submit to arbitration, sue or defend any and all claims for or against [1730 LP]." More so, the agreement restricts AJC from withdrawing from its position of general partner, stating: "[AJC] may not voluntarily withdraw from [1730 LP]. The Limited Partners shall have no right to remove [AJC]." According to the agreement, AJC is the proper, and only, entity with the power to authorize the com-

mencement of an action by 1730 LP.

AJC is a limited liability company consisting of three members: Fischer, Jefferson Scinto, and Christian Scinto. Accordingly, we turn to AJC's operating agreement to determine whether an individual member may act on behalf of AJC to commence this particular action. See General Statutes § 34-243d (a) (1) (operating agreement governs "[r]elations among the members as members and between the members and the limited liability company"). The AJC operating agreement provides in relevant part: "All decisions affecting the policy and management of the Company shall be made by unanimous consent of the Members. No change shall be made in the nature or scope of the Company business . . . ." It also provides in relevant part: "The Members may delegate to . . . an individual Member . . . any management responsibility or authority except as set forth in this Agreement to the contrary." Though the agreement does not define "decisions affecting the policy and management," it specifies a number of actions that require unanimous consent of its members, stating that a member shall not "borrow or lend money, make, deliver, accept or endorse any commercial paper, execute any mortgage, security instrument, bond or lease, or purchase or contract to purchase any property . . . or sell or contract to sell any assets of the Company, all other than in the ordinary course of the Company business, nor shall any authorization be given to any member or other Person to do any act on behalf of the Company in contravention of this Agreement, without the unanimous consent of the Members." The agreement also sets forth the purpose and scope of the company, stating in relevant part: "The business to be conducted by the Company shall be limited to (i) the sale, acquisition, ownership, development, operation, lease, investment and management of real properties . . . . The business of the Company shall not be extended by implication or otherwise beyond the scope of this Agreement." Thus, the commencement of litigation on behalf of 1730 LP against its mortgage lender is not an act that is within the scope of AJC's ordinary course of business and is, instead, a decision that affects the policy and management of AJC.

Finally, the affidavit of Christan Scinto also sets forth undisputed facts. The affidavit states that neither he nor Jefferson Scinto authorized or agreed to commence the action on behalf of AJC or, in turn, 1730 LP.

We next turn to Fischer's counteraffidavit to determine whether it effectively refuted the alleged lack of authority found in the complaint and the undisputed facts in the record. Fischer's affidavit does not challenge the applicability of 1730 LP's partnership agreement or AJC's operating agreement. It also does not assert that the other members of AJC authorized the action. Instead, the affidavit, sounding much like the

operative complaint, asserts that Fischer has been the sole management authority for the property by unanimous agreement of AJC's members and has also been the sole member of AJC that has carried out operations on behalf of 1730 LP. The affidavit also asserts that People's United has recognized Fischer as the sole member of AJC authorized to act on behalf of AJC for many years and that "[i]t is not uncommon in the management of and investment in real estate for litigation to be a part of the business activities . . . most commonly in, but not limited to, eviction and collection actions." These statements do not undermine the clear and unambiguous language of the controlling 1730 LP partnership agreement and AJC operating agreement.

The record conclusively establishes that 1730 LP's partnership agreement gave AJC, not Fischer, the exclusive role of general partner. Fischer, acting alone and purportedly on behalf of AJC, brought the action on behalf of 1730 LP. The Scintos did not affirmatively vote for or consent to the commencement of the action; thus, Fischer would need to be authorized to act individually on behalf of AJC for the action to be legally authorized. As demonstrated by the language of AJC's operating agreement, Fischer's management responsibilities for AJC in his role as the property manager fall within the scope and purpose of AJC and Fischer's authority is not disputed in this regard. In contrast, bringing an action against 1730 LP's mortgage lender is outside the ordinary course of AJC's business and is a decision that affects the management and policy of AJC. AJC's operating agreement clearly requires that such actions must be made with the unanimous consent of all of AJC's members.[8]

Viewing the operative complaint in light of the undisputed facts put forth by the defendants and Fischer's counteraffidavit, it is clear that 1730 LP has not met its burden of proving that it had the requisite authority to bring the underlying action. Unanimous consent from AJC's members was required. 1730 LP provided no evidence that an action against 1730 LP's mortgage lender falls within AJC's ordinary course of business or that such an action would not affect AJC's policy and management. Fischer's mere assertion that litigation is not uncommon in the management of real estate does not effectively refute the language of the AJC operating agreement or the 1730 LP partnership agreement or speak to the unique litigation at issue. This assertion alone thus fails to satisfy the burden of establishing that Fischer had authority to bring this action. 1730 LP had the burden of establishing that its action was brought with proper authority, and it failed to satisfy this burden.

1730 LP makes two primary arguments on appeal.[9] First, it argues that Fischer was delegated AJC's management authority and that this delegation effectively

made him the "general partner" of 1730 LP. 1730 LP further argues that the trial court had before it undisputed "party admissions" that delegated Fischer the " 'General Partner' management responsibility and authority . . . ." We do not find 1730 LP's statement to be an accurate representation of the record and are not persuaded by its argument.

The "party admissions" that 1730 LP refers to are the assertions in the complaint that "AJC delegated its management responsibility for the operation of AJC and the property . . . ." Nowhere in the complaint or in Fischer's affidavit does it state that Fischer was delegated the role of 1730 LP's "general partner." Rather, the language of the complaint and Fischer's affidavit support that Fischer was delegated responsibility to act as property manager for the property on behalf of AJC. The role of general partner carries legal significance under 1730 LP's partnership agreement and § 34-17 and is not synonymous with the role of property manager.

Even assuming arguendo that Fischer was delegated the role of general partner, 1730 LP's partnership agreement and AJC's operating agreement clearly prohibit such a delegation. 1730 LP's partnership agreement names AJC as the "[g]eneral [p]artner" and grants AJC the exclusive right to bring an action by 1730 LP. Furthermore, the agreement states that the general partner may not voluntarily withdraw. If AJC did attempt to delegate its role as general partner to Fischer, this delegation would violate the agreement's restriction on AJC's right to withdraw from its position as general partner. See *Connecticut National Bank* v. *Rehab Associates*, 300 Conn. 314, 322, 12 A.3d 995 (2011) (" 'in construing contracts, we give effect to all the language included therein, as the law of contract interpretation . . . militates against interpreting a contract in a way that renders a provision superfluous' ").

AJC's operating agreement also prohibits the delegation of AJC's general partner authority over 1730 LP. AJC's operating agreement states that "[t]he Members may delegate to . . . an individual Member . . . any management responsibility or authority *except as set forth in this Agreement* to the contrary." (Emphasis added.) A complete delegation of AJC's authority to act as the general partner of 1730 LP is precisely the type of delegation prohibited by AJC's operating agreement, which requires the members' unanimous consent for actions outside the ordinary course of business and actions affecting AJC's policy and management.

1730 LP next argues that the trial court failed to distinguish between 1730 LP's partnership agreement and AJC's operating agreement and that this improperly led the trial court to determine that 1730 LP lacked standing. Specifically, 1730 LP argues that AJC's operating agreement is only relevant to the extent that it allows AJC to delegate authority and that, because

AJC's authority as general partner was delegated, the court should have looked to the agreement that controls 1730 LP in determining what constituted proper authority. This argument relies on the same logical foundation of 1730 LP's first argument—that AJC was divested of its management authority because its authority as general partner was delegated to Fischer. Thus, it fails for the same reasons. Because of the language in both the 1730 LP partnership agreement and the AJC operating agreement, AJC could not delegate its exclusive control and management of 1730 LP or remove itself from its role as general partner. Furthermore, there was no support in the record that such a delegation was made. Accordingly, we affirm the trial court's motion to dismiss all counts brought by 1730 LP.

The appeal is dismissed as to the claims of Alan Fischer and Fischer Real Estate, Inc., challenging the dismissal of counts one, two, and three of the complaint; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] We refer in this opinion to Fischer, Fischer Real Estate, Inc., and 1730 LP collectively as the plaintiffs and to People's United, Nuzzolo, and Lopez collectively as the defendants. Where appropriate, we refer to the parties individually by name.

[2] Fischer proposed that the language of the resolution from AJC read: "The undersigned manager/members of [AJC], the General Partner of [1730 LP] (the 'Borrower'), confirm that [Fischer] manager/member, pursuant to an agreement of the undersigned members of [AJC], had, and continues to have, full responsibility for the operation of [AJC] . . . ." Christian Scinto and Jefferson Scinto refused to sign a resolution containing the language proposed by Fischer and instead proposed different language: "The undersigned members of [AJC], the General Partner of [1730 LP] (the 'Borrower'), confirm that [AJC], had, and continues to have, full responsibility for the operation of the Borrower . . . ." Fischer refused to sign the resolution with the language proposed by the Scintos. Thus, no resolution was signed by all members of AJC due to a dispute over Fischer's purported responsibility for the operation of AJC.

[3] As a result of the default, People's United notified Fischer that a heightened default rate would apply until the note was paid in full. Counsel for People's United sent a letter to Fischer, Christian Scinto, and Jefferson Scinto on November 17, 2020, stating that the note had matured and payment was past due and providing the outstanding balance of the note as of November 16, 2020.

[4] AJC's operating agreement provides in relevant part: "Except as expressly provided for herein to the contrary, the rights and obligations of the Members and the administration and termination of [AJC] shall be governed by the Connecticut Limited Liability Company Act as the same may be amended from time to time." We note that AJC's operating agreement was executed in 1998; our legislature has since repealed the Connecticut Limited Liability Company Act, effective July 1, 2017, and replaced it with CULLCA.

CULLCA, specifically General Statutes § 34-255f (b), provides in relevant part: "In a member-managed limited liability company . . . (2) Matters in the ordinary course of the activities of the company shall be decided by the affirmative vote or consent of a majority in interest of the members.

"(3) The affirmative vote or consent of two-thirds in interest of the members is required to: (A) Undertake an act outside the ordinary course of the company's activities and affairs . . . ."

[5] This fact was set forth in Christian Scinto's affidavit and was not disputed by Fischer.

[6] The plaintiffs' supplemental brief failed to properly identify any exception that would allow the partial judgment to be considered a final judgment by this court. Although the plaintiffs quote *Heyward* v. *Judicial Dept.*, 159 Conn. App. 794, 801, 124 A.3d 920 (2015), which quotes Practice Book § 61-

4 (a), that rule of practice is not applicable to the present case. Practice Book § 61-4 (a) requires the trial court to make a written determination "that the issues resolved by the judgment are of such significance to the determination of the outcome of the case that the delay incident to the appeal would be justified, and the chief justice or chief judge of the court having appellate jurisdiction concurs. . . ." No such determination was made in the present case.

[7] We recognize that a court's disposition of one count that is legally inconsistent or mutually exclusive of another count may be deemed to implicitly dispose of the legally inconsistent count. See *Clinton* v. *Aspinwall*, 344 Conn. 696, 704, 281 A.3d 1174 (2022). On the other hand, if an undisposed count is based on a legally consistent alternative theory, such an implicit disposition cannot be presumed. Id., 705. In the present case, there is no legal inconsistency between the plaintiffs' first three counts, which are allegations of breach of contract, breach of the covenant of good faith and fair dealing, and CUTPA violations, and the fourth and fifth counts, which are allegations of tortious interference with a business expectancy and negligent infliction of emotional distress.

[8] The trial court also considered the language of CULLCA to determine whether AJC bringing an action on behalf of 1730 LP was made with proper authority. AJC's operating agreement provides in relevant part: "Except as expressly provided for herein to the contrary, the rights and obligations of the Members and the administration and termination of [AJC] shall be governed by the Connecticut Limited Liability Company Act . . . ." CULLCA provides in relevant part that "[t]he affirmative vote or consent of two-thirds in interest of the members is required to: (A) Undertake an act outside the ordinary course of the company's activities and affairs . . . ." General Statutes § 34-255f (b) (3). Thus, even if the AJC operating agreement did not provide for the authority of a member to commence an action, Fischer alone could not authorize this action on behalf of AJC regardless of whether the action fell within or outside the ordinary course of business. On appeal, however, neither party argues that 1730 LP's partnership agreement and AJC's operating agreement are ambiguous as to the present issue. Thus, we need not consider the language of CULLCA.

[9] 1730 LP also argues on appeal that the trial court improperly applied the law and deprived it of its "due process and equal protection rights." Specifically, 1730 LP argues that "[the court] failed to take the facts alleged in the complaint, including facts necessarily implied therefrom and to construe the allegations in the complaint in a manner most favorable to the pleader as it is mandated . . . in deciding a motion to dismiss." 1730 LP incorrectly states the law under *Conboy* v. *State*, supra, 292 Conn. 651. As previously stated in this opinion, the court is required to construe allegations in the complaint in a manner most favorable to the pleader when the facts in the complaint are not supplemented by undisputed facts on the record. See id. In the present case, the complaint was supplemented by undisputed facts that were brought before the trial court in support of the defendants' motion to dismiss. Under these circumstances, the court "need not conclusively presume the validity of the allegations of the complaint." (Internal quotation marks omitted.) Id., 652. Additionally, as discussed further in this opinion, because 1730 LP's authority to bring the action was challenged, the burden was on 1730 LP to establish that it had authority to commence the litigation. See *Community Collaborative of Bridgeport, Inc.* v. *Ganim*, supra, 241 Conn. 554.